**TEXAS DEPARTMENT OF PUBLIC SAFETY and Thomas Davis, in his Official Capacity as Director of the Texas Department of Public Safety, Appellants,**

v.

**INTERNATIONAL CAPITAL CORPORATION, Appellee.**

No. 03–00–00329–CV.

Court of Appeals of Texas, Austin.

Feb. 28, 2001.

Carey E. Smith, Asst. Atty. Gen., Austin, for appellants.

Hunter Burkhalter, Kemp Smith Duncan & Hammond, P.C., Austin, for appellee.

Before Chief Justice ABOUSSIE, Justices B.A. SMITH and PATTERSON.

ABOUSSIE, Chief Justice.

Appellee, International Capital Corporation ("ICC"), brought suit against appellants, the Texas Department of Public Safety and Thomas Davis, in his Official Capacity as Director of the Texas Department of Public Safety (collectively "DPS"), for payment due in a contractual dispute. After a hearing to determine whether DPS was entitled to sovereign immunity, the trial court denied DPS's plea to the jurisdiction. DPS appeals the trial court's ruling. We will vacate the order of the trial court.

**BACKGROUND**

On February 13, 1998, DPS issued a purchase order to W2C Direct, Inc. ("W2C") for twenty-eight computers and monitors with a total purchase price of $101,136.00. On February 27, 1998, W2C assigned and transferred all of its accounts and contracts receivable to ICC, including the purchase order from DPS. By March

16, 1998, ICC had delivered all twenty-eight computers and monitors to DPS. After ICC delivered the goods to DPS, DPS expressed concerns about three of the computers and ICC's performance of its obligation under the warranty DPS had purchased for the computers. ICC alleges that it fulfilled the warranty obligation by offering to hire, at its own expense, a technician to set-up, debug, repair, or replace any defective computer components, as well as provide on-site warranty service for three years. DPS did not accept this offer and returned all twenty-eight computers and monitors to ICC. DPS did not tender payment to ICC.

ICC filed suit against DPS on May 29, 1998, seeking recovery of damages for DPS's alleged breach of the contract. DPS filed a plea to the jurisdiction, claiming that as a state entity, it is immune from being sued. The trial court denied the plea and DPS brings an interlocutory appeal from the trial court's ruling. *See* Tex.Civ.Prac. & Rem.Code Ann. § 51.014(a)(8) (West Supp.2001).

## DISCUSSION

DPS asserts that the trial court erred in denying its plea to the jurisdiction because DPS is a state entity protected by sovereign immunity from suit. *See* Tex.Civ. Prac. & Rem.Code Ann. § 101.001(3)(A) (West Supp.2001). Sovereign immunity includes two principles that protect the State and other governmental entities from lawsuits for damages: immunity from liability and immunity from suit. *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). Immunity from liability, which protects the State from judgments, does not affect a court's jurisdiction to hear a case. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999). Immunity from suit, in contrast, bars an action against the State unless the legislature expressly gives its consent. *Federal Sign*, 951 S.W.2d at 405.

■ The State does not waive immunity from suit simply by contracting with a private person. *Id.* at 408. The State may enter into a contract but cannot be sued for breach of that contract absent express waiver. *Id.* Under the doctrine of sovereign immunity, a suit against a state institution is a suit against the State. *Texas S. Univ. v. Federal Sign*, 889 S.W.2d 509, 511 (Tex.App.—Houston [14th Dist.] 1994), *aff'd*, 951 S.W.2d 401 (Tex.1997). Here, ICC contends that DPS waived its immunity from suit by its conduct in the contractual dealings between ICC and DPS.

■ Because the determination of subject matter jurisdiction is a question of law, we review the trial court's decision under a *de novo* standard of review. *Texas State Employees Union/CWA Local 6184 A.F.L.C.I.O. v. Texas Workforce Comm'n*, 16 S.W.3d 61, 65 (Tex.App.—Austin, no pet.). A plea to the jurisdiction contests the trial court's authority to determine the subject matter of the cause of action. *Amador v. San Antonio State Hosp.*, 993 S.W.2d 253, 254 (Tex.App.—San Antonio 1999, pet. denied). Immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *Texas Dep't of Transp.*, 8 S.W.3d at 638–39.

■ ICC relies on *Federal Sign* to argue that DPS waived its immunity from suit by its conduct in this case. In *Federal Sign*, a state university signed a contract with Federal Sign to build basketball scoreboards. After Federal Sign began building the scoreboards but before delivery, the university informed Federal Sign that it would seek a new source for its scoreboards and ultimately found new vendors. Federal Sign sued for breach of

contract. The supreme court upheld the university's plea to the jurisdiction, holding, "The act of contracting does not waive the State's *immunity from suit.*" *Federal Sign*, 951 S.W.2d at 408. The court, however, limited its holding to the facts of that case, noting: "There may be other circumstances where the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it contracts." *Id.* at 408 n. 1. In the past, we have interpreted the language in *Federal Sign* as suggesting that the State may waive its immunity from suit by accepting benefits under a contract. *See Little–Tex Insulation Co. v. General Servs. Comm'n*, 997 S.W.2d 358, 364–65 (Tex.App.—Austin 1999), *rev'd*, 44 Tex. Sup.Ct. J. 397, 39 S.W.3d 591 (Feb. 1, 2001); *Aer–Aerotron, Inc. v. Texas Dep't of Transp.*, 997 S.W.2d 687, 692 (Tex.App.—Austin 1999), *rev'd*, 44 Tex. Sup.Ct. J. 406, 39 S.W.3d 220 (Feb. 1, 2001); *Texas Natural Res. Conservation Comm'n v. IT–Davy*, 998 S.W.2d 898, 901–02 (Tex.App.—Austin 1999, pet. filed).

Recently, however, the Texas Supreme Court explicitly declined to adopt a waiver-by-conduct exception to sovereign immunity in light of the legislature's establishment of an administrative process for resolving certain breach-of-contract claims against the State. *See General Servs. Comm'n v. Little–Tex Insulation Co.*, 44 Tex. Sup.Ct. J. 397, 401, 39 S.W.3d 591, 597 (Feb. 1, 2001). Upon reexamining its decision in *Federal Sign*, the supreme court in *Little–Tex Insulation Co.* noted:

> [R]egardless of what we might have held in such a case had it come before the Court in 1997, the situation has changed. After *Federal Sign*, the Legislature enacted a dispute-resolution procedure to resolve certain breach-of-contract cases against the State. Historically, we have left to the Legislature whether to waive sovereign immunity. Today we once

again adhere to this principle and defer to the Legislature.

*Id.* at 399, 39 S.W.3d 591, 595 (citations omitted). The court went on to hold that "the State does not waive its immunity from a breach-of-contract action by accepting the benefits of a contract. Absent special statutory consent to sue, a party may not pursue a breach-of-contract claim against the State without participating in Chapter 2260's administrative process." *Id.* at 401, 39 S.W.3d 591, 598.

Chapter 2260 of the Texas Government Code retains sovereign immunity from suit but provides an administrative process for resolving breach-of-contract claims against the State. Tex. Gov't Code Ann. §§ 2260.001–.108 (West 2000). If a contracting party believes that the State has breached a written contract for goods, services, or construction, the party has 180 days to give written notice of the alleged breach to the governmental agency or unit. *Id.* §§ 2260.001(1), .051(b). The chapter further establishes procedures that include mediation and mandatory negotiations between the State and the claimant, with the option for a contested case hearing before the State Office of Administrative Hearings if the claim cannot be informally resolved. *Id.* §§ 2260.052, .056, .102.

ICC argues that Chapter 2260 does not apply to the present case because ICC filed suit more than a year before Chapter 2260 became effective. The supreme court addressed the applicability of Chapter 2260 to matters already in litigation in *Little–Tex Insulation Co.*, and stated:

> [I]f a party had a claim pending when the Act became effective on August 30, 1999, it had 180 days from that date to provide written notice to the appropriate governmental agency or unit. The only claims exempted from this procedure under the Act are those claims or dis-

putes in which the Legislature has already granted permission to sue.

*Little–Tex Insulation Co.*, 44 Tex. Sup.Ct. J. at 401, 39 S.W.3d 591, 597 (citations omitted). Because its argument that the legislature did not intend to interfere with matters already in litigation ignores the 180 day provision, ICC, like Little–Tex, does not fall under the Act's exception. *See id.* "Compliance with 2260 ... is a necessary step before a party can petition to sue the State." *Id.* at 400, 39 S.W.3d 591, 597. Thus, pursuant to *Little–Tex Insulation Co.*, we hold that DPS has not waived its immunity from suit by its conduct in this case and that ICC could therefore not pursue a breach-of-contract claim against DPS without first participating in Chapter 2260's administrative process. *See id.* at 401, 39 S.W.3d 591, 597.

## CONCLUSION

Because sovereign immunity bars the present suit against DPS and DPS has not waived its immunity, the court improperly denied DPS's plea to the jurisdiction. We therefore vacate the trial court's order denying DPS's plea to the jurisdiction and dismiss ICC's cause for want of jurisdiction. *See* Tex.R.App.P. 43.2(e).