**CATALINA DEVELOPMENT, INC. and Gregory Collins, Appellants,**

v.

**COUNTY OF EL PASO, Texas, Appellee.**

No. 08-00-00207-CV.

Court of Appeals of Texas, El Paso.

Jan. 11, 2002.

Robert A. Skipworth, El Paso, for Appellants.

Steven L. Hughes, Mounce, Green, Myers, Safi & Galatzan, El Paso, for Appellee.

Before BARAJAS, C.J., LARSEN, and McCLURE, JJ.

### *OPINION*

BARAJAS, Chief Justice.

This is an appeal from the granting of summary judgment in a breach of contract case. For the reasons stated, we affirm.

### I. *SUMMARY OF THE EVIDENCE* [1]

On October 21, 1992, the El Paso County Commissioners' Court approved a trade

---

1. Many of these facts were reported by the Court when this case was on appeal on anoth-

of real estate. In exchange for 464.4 acres owned by Appellee, El Paso County ("the County"), in the W.J. Rand Survey, the County was to receive from the General Land Office ("GLO") 381.90 acres in Section 16, Township 3, Block 79 of the T & P Railroad Survey. On December 9, 1992, the Commissioners' Court authorized the County Judge to sign a warranty deed conveying the 464.4 acres to the GLO, which in turn conveyed the 381.90 acres of the T & P Railroad property ("the Property") to the County.

On January 27, 1993, the Commissioners' Court passed a motion which provided that the Property acquired from the GLO, described as the "County Fairgrounds and Mixed Use Project property Sec. 16," would be subject to sale by sealed bids. On March 17, 1993, the Commissioners' Court passed a resolution which required the County to either obtain the State's appraisal on the Property, or if the State's appraisal could not be obtained, have an appraisal performed by Williams Scott Burns & Co. The County obtained the State's appraisal of the Property, which valued the land at $2,554,000 as of May 14, 1992.

On September 24, 1993 and September 26, 1993, the County's purchasing agent placed an advertisement for sealed bids in the El Paso Times. The advertisement described the Property as "Section 16 Loop 375 land for County of El Paso" and stated in part:

> Said contract shall be let to the lowest [sic] responsible bidder, and the Commissioners' Court reserves the right to reject any and all bids and waive technicalities.

On or about September 26, 1994, Appellants, Catalina Development Inc. and Gregory Collins, submitted a bid of $2,554,000 for the purchase of the Property in the form of an earnest money contract and an earnest money check for $5,000.

On October 12, 1994, a majority of the Commissioners' Court voted to accept Appellants' bid to purchase the Property. Thereafter, Appellants' earnest money check was deposited. Collins then deposited $2,555,961.72 with Lawyers Title of El Paso. The Commissioners' Court placed the authorization for the County Judge to sign the warranty deed conveying the Property to Collins on the agenda for the November 30, December 7, December 14, December 27, and December 28, 1994 meetings. On November 30, 1994, the motion to sign the deed was tabled for one week. On December 7, 1994, the motion to sign the deed failed three votes to two and was tabled. On December 14, 1994, the Commissioners and then-County Judge Alicia Chacon unanimously voted to table the issue of signing the deed for six weeks.

On December 14, 1994, Assistant County Attorney Lee Shapleigh sent Collins a warranty deed and affidavit, which were to be used to close the transaction. Collins approved the documents. Shapleigh then placed the approval and signing of the deed on the Commissioners' Court agenda. On December 20, 1994, County Judge–Elect Chuck Mattox, Commissioner Rogelio Sanchez, and Commissioner Charles Hooten filed suit requesting a temporary restraining order, temporary injunction, and permanent injunction, each seeking to prevent Commissioners' Court from approving the sale and signing the deed to Collins. A temporary restraining order was issued by the 34th District Court on

er issue. *See Collins v. County of El Paso*, 954 S.W.2d 137, 140–41 (Tex.App.-El Paso 1997, pet. denied). The parties later entered into an agreed stipulation on the majority of these facts.

December 20, 1994. The court then issued a temporary injunction on January 4, 1995.

Appellants filed suit against the County for breach of contract and for specific performance because the Property was never conveyed to Catalina Development or Collins. The County Court at Law Number Seven granted the County's motion for summary judgment on the issue of sovereign immunity. This appeal follows.

## II. *DISCUSSION*

Appellants attack the granting of summary judgment. Specifically, Appellants argue that there was a legally binding contract formed between themselves and the County and that the County waived immunity from suit by accepting and partially performing on the contract. The County argues that there was no waiver by conduct and that it was entitled to sovereign immunity from suit.

In a consolidated case, the Supreme Court of Texas recently held that the State may not waive its immunity from suit by its conduct. *See General Services Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex.2001).[2] Both *Little–Tex* and *DalMac* argued that once the State has accepted benefits under a contract, it would be unfair to allow the State to shield itself from suit by evoking sovereign immunity. *See id.* at 593. They relied on a footnote and language in the concurring opinion of *Federal Sign v. Texas Southern Univ.*, 951 S.W.2d 401, 408 n. 1, 412–13 (Tex.1997) to support this position.

In *Federal Sign*, the Supreme Court held that the State's contracting for goods and services does not waive its immunity from suit. *Federal Sign*, 951 S.W.2d at 408. The question of whether the State's conduct may waive its immunity from suit was expressly left open. *See id.* at 408 n. 1. In *Little–Tex*, the Supreme Court stated that *Little–Tex* and *DalMac's* suggested outcome could be reached only by first concluding that a waiver-by-conduct exception to sovereign immunity existed whereby a party could sue the State without first obtaining legislative consent under Chapter 107 of the Civil Practice and Remedies Code or some other statute. *See Little–Tex*, 39 S.W.3d at 594–95; *see generally* TEX. CIV. PRAC. & REM.CODE ANN. § 107.002 (Vernon 1997). Furthermore, the court noted that it consistently defers to the Legislature to waive sovereign immunity and that after the *Federal Sign* decision, the Legislature enacted a dispute-resolution procedure to resolve certain breach-of-contract cases against the State.[3] *See Little–Tex*, 39 S.W.3d at 595, 600; *see also* TEX. GOV'T CODE ANN. § 2260.001–2260.108 (Vernon 2000). Thus, the court held that the State does not waive its immunity from a breach-of-contract action by accepting the benefits of a contract and that absent statutory consent to sue, a party may not pursue a breach-of-contract claim against the State without participating in Chapter 2260's administrative process. *See Little–Tex*, 39 S.W.3d at 598.

Because the Supreme Court refused to judicially adopt a waiver-by-conduct doctrine and because this Court has consistently held that the waiver of sovereign immunity is a matter addressed to the Legislature and the Legislature must

---

**2.** *Texas A & M University v. DalMac Construction Co.* is the second case. *See also Texas Dep't of Transp. v. Aer–Aerotron, Inc.*, 39 S.W.3d 220 (Tex. 2001). It is these cases, prior to their reversals, upon which Appellants relied.

**3.** A "county" is expressly excluded in the definition of a "unit of state government" in Chapter 2260. *See* TEX. GOV'T CODE ANN. § 2260.001(4) (Vernon 2000).

waive sovereign immunity by clear and unambiguous language, we overrule Appellants' issue and affirm the judgment of the trial court. *See, e.g., Texas Dept. of Human Services v. Sakil,* 25 S.W.3d 22, 23 (Tex.App.-El Paso 1999, no pet.); *Carrillo v. Texas Tech Univ. Health Sciences Ctr.,* 960 S.W.2d 870, 871 (Tex.App.-El Paso 1997, no pet.); *Texas Dep't of Health v. Ruiz,* 960 S.W.2d 714, 715 (Tex.App.-El Paso 1997, pet. denied); *Canutillo Indep. Sch. Dist. v. Olivares,* 917 S.W.2d 494, 496 (Tex.App.-El Paso 1996, no writ).

Having overruled Appellants' issue, we affirm the judgment of the trial court.

LARSEN, J., concurring.

LARSEN, Justice, concurring.

Based upon the majority holding in *General Services Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 598 (Tex.2001), I respectfully concur in the decision here. I write today, however, to express my agreement with the reasoning found in Justice Enoch's dissent in that case. *Id.* at 602–604 (Enoch, J., dissenting). His approach outlines the only rational one to the question of sovereign immunity and the State's ability to contract. I agree that a contract which is not enforceable against the State, even where the State has accepted the benefits of its bargain, is simply not a contract at all. *Id.* at 602.

I also note that the majority's reasoning in *Little–Tex* is based upon the availability of an administrative process under Tex. Gov't Code Ann. § 2260 (Vernon 2000). Counties, including Defendant/Appellee El Paso County, are specifically exempted from the administrative process outlined there. Tex. Gov't Code Ann. § 2260.001(4) (Vernon 2000). This leaves Appellant in an unhappy position: barred by sovereign immunity from pursuing his breach of contract claim, yet specifically excluded from the legislatively-designed remedial process. Nevertheless, this exemption was clearly not intended as a waiver of sovereign immunity for counties and other exempted units of State government, as the chapter specifically states "this chapter does not waive sovereign immunity to suit or liability." Tex. Gov't Code Ann. § 2260.006 (Vernon 2000).

Rather than adding to the byzantine construct which preserves the fiction that the sovereign can do no wrong, I would hold with Justice Enoch simply that a contracting party is liable for breach of that contract. If the contracting party is the State or any subdivision thereof, including the County of El Paso, the contract itself, together with the legislation that authorizes it, should be deemed a waiver of any sovereign immunity claims.

For these reasons, I concur in the judgment.