CATALINA DEVELOPMENT,
INC. and Gregory Collins,
Petitioners,

v.

COUNTY OF EL PASO,
Texas, Respondent.

No. 02–0299.

Supreme Court of Texas.

Argued Dec. 4, 2002.

Decided May 8, 2003.

Robert A. Skipworth, Law Office of Robert A. Skipworth, Francis S. Ainsa, Jr., El Paso, for petitioners.

Steven L. Hughes, Carl H. Green, James A. Martinez, Mounce Green Myers Safi & Galatzan, El Paso, for respondent.

Justice O'NEILL delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice OWEN, Justice JEFFERSON, Justice SCHNEIDER, Justice SMITH, and Justice WAINWRIGHT joined.

Once again, we are called upon to consider a waiver-by-conduct exception to the sovereign-immunity rule. In this case, a county solicited bids for purchasing a parcel of land, accepted the highest bid, deposited the tendered earnest money, and sent the purported buyer a warranty deed and affidavit to be used to close the transaction. The county delayed authorization to sign the deed, however, and a newly elected commissioners court refused to approve the sale. We must decide whether the county, by its conduct, waived its immunity from suit. We hold that it did not, and affirm the court of appeals' judgment affirming the trial court's summary judgment in the county's favor. 105 S.W.3d 643.

I

On January 27, 1993, the El Paso County Commissioners Court passed a motion providing that a 381.90–acre parcel of

county land would be subject to sale by sealed bids. In September 1993, the County advertised the proposed sale in the local newspaper. Gregory Collins and Catalina Development, Inc. (collectively "Collins") submitted a $2,554,000 bid, along with a $5,000 earnest money check. In October 1994, a majority of the commissioners court voted to accept Collins's bid. The County deposited the earnest money check, and Collins deposited $2,554,961.72 with a title company to obtain title to the land. The commissioners court placed a motion on the November 30th agenda authorizing the county judge to sign the deed over to Collins, but the court tabled the motion for one week. On December 7th, the motion failed and was again tabled. On December 14th, the commissioners voted to table the motion for six weeks. That same day, an assistant county attorney sent Collins a warranty deed and affidavit, which were to be used to close the transaction. Collins signed the documents, and the county attorney placed the motion authorizing the deed's execution on the agenda for the court's next meeting. Before that meeting, two commissioners and the county judge-elect filed suit to enjoin the court from approving the sale and signing the deed over to Collins. The district court issued a temporary restraining order on December 20th.

On January 1, 1995, the newly elected commissioners court took office. The new court never signed the property over to Collins, and Collins sued El Paso County for breach of contract and specific performance. The trial court granted the County's motion for summary judgment based on its immunity from suit. The court of appeals affirmed. 105 S.W.3d 643. We granted Collins's petition for review to consider whether, by its conduct, the County waived immunity from suit.

## II

■■ "A county is a governmental unit protected by the doctrine of sovereign immunity." *Travis County v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 248 (Tex.2002). Generally, a governmental unit possesses both immunity from liability and immunity from suit. *Id.* When the governmental unit contracts with a private party it waives immunity from liability, but not immunity from suit. *Id.* The governmental unit waives immunity from suit only through its express consent. *Id.*

It is undisputed that El Paso County did not expressly waive its immunity from suit here. In *Federal Sign*, we noted that there might be circumstances "where the State may waive its immunity by conduct other than simply executing a contract," although under the facts of that case, it was not necessary to indicate what those circumstances might be. *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 408 n. 1 (Tex.1997). Since *Federal Sign*, we have had several occasions to consider circumstances that were urged to constitute a waiver by conduct. *See Pelzel*, 77 S.W.3d at 251–52 (county withheld money due under a construction contract pursuant to contract's liquidated-damages clause); *Texas Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 856–57 (Tex. 2002) (contractor sought to recover cost overruns allowed by contract's equitable-adjustments clause); *Gen. Servs. Comm'n v. Little–Tex Insulation Co., Inc.*, 39 S.W.3d 591, 595 (Tex.2001) (contract disputes regarding cost overruns for completed work, and to recover for work partially performed under a contract that was subsequently terminated). We held that the facts these cases presented did not support an equitable waiver by conduct of the governmental entities' immunity.

■■ Relying on *Federal Sign*, Collins claims that the facts presented here sup-

port a finding that El Paso County, by its conduct, waived immunity from suit. Specifically, Collins asserts that the County waived immunity by advertising for bids to sell the land, accepting Collins's bid, accepting and depositing Collins's earnest money, and sending Collins an earnest money contract to sign. The County responds that these activities constitute nothing more than acts of contract formation, which this Court has already stated do not, by themselves, waive immunity from suit. *Pelzel*, 77 S.W.3d at 248; *Federal Sign*, 951 S.W.2d at 408. We agree with El Paso County.

The actions that El Paso County took are the kind that are necessary and expected during contract formation. Soliciting for bids in the local paper allowed the County to determine who might be interested in purchasing the land, and was a required act under Texas law. TEX. LOC. GOV'T CODE § 272.001(a). Accepting Collins's bid and earnest money, and sending Collins a contract, were steps in forming a contract between the parties. Collins describes nothing in El Paso County's conduct that falls outside the realm of contract formation. And we have made clear that contract formation, by itself, is not sufficient to waive a governmental unit's immunity from suit. *Pelzel*, 77 S.W.3d at 248; *Federal Sign*, 951 S.W.2d at 408.

Collins argues that this case is factually distinguishable from *Federal Sign* because Collins fully performed under the contract. *See Federal Sign*, 951 S.W.2d at 412–13 (HECHT, J., concurring) (questioning whether the result would have been different had Federal Sign tendered performance). Collins claims that his actions, including forwarding the earnest money to the County and depositing money with the title company, fulfilled his obligations to the County and constituted full performance. But Collins ignores an important distinction between *Federal Sign* and this case. In *Federal Sign*, the State was the buyer of commercial goods, while here the County is the seller of government land. Collins does not seek to recover for goods already conveyed. Instead, Collins wishes to force a sale of land that belongs to the people of El Paso County. Although in *Federal Sign* we suggested that some circumstances might warrant recognizing a waiver by conduct, the equitable basis for such a waiver simply does not exist under this set of facts.

Indeed, the facts presented here illustrate a fundamental reason why immunity exists—to prevent governmental entities from being bound by the policy decisions of their predecessors. *See IT–Davy*, 74 S.W.3d at 854 (stating that "legislative control ensures that current policymakers are neither bound by, nor held accountable for, policies underlying their predecessors' long-term contracts") (citing Harold J. Krent, *Reconceptualizing Sovereign Immunity*, 45 VAND. L.REV. 1529, 1538 (1992)). In this case, the County, upon an electoral change in the commissioners court, determined that selling the property to Collins was a poor decision. Rather than lock El Paso County residents into a contract not in their best interest, the court acted within its discretion to protect the perceived interests of the public by rejecting the contract. In doing so, the County did not profit unfairly at Collins's expense.[1]

---

1. In his brief and at oral argument, Collins pointed out that El Paso County had kept the $5,000 earnest money deposit even after it became clear that the County had no intention of approving the contract. We note that when this point was raised before the trial court, the County returned the money with interest. Because the issue is moot, we do not address what relief Collins might have been entitled to had the County continued to retain the deposit.

We note that the bidding statute under which the sale of the County's land was conducted further supports our conclusion. *See* Tex. Loc. Gov't Code § 272.001. Section 272.001(d) provides that a governmental entity acting under the statute is not required "to accept any bid or offer *or to complete a sale* or exchange." *Id.* (emphasis added). Here, although the County had taken a number of steps toward closing the sale, it ultimately declined to complete the transaction. Section 272.001(d) makes clear that the County was under no statutory obligation either to accept any potential bids or to complete a transaction if it did decide to accept a bid.

Finally, we have reviewed Collins's additional complaints and conclude that they were waived for failure to raise them below.

### III

We hold that El Paso County did not, by its conduct, waive its immunity in this case. Accordingly, we affirm the judgment of the court of appeals.

Justice ENOCH filed a dissenting opinion.

Justice ENOCH, dissenting.

I continue my disagreement with this Court's unique position among the vast majority of states that when a governmental unit contracts with a private party, the governmental unit does not waive immunity from suit.[1] Today, the Court holds that El Paso County did not waive its immunity from suit in the underlying breach of con-

tract action brought by Gregory Collins and Catalina Development, Inc. (collectively, "Collins").[2] In addition, the Court misleads the public by refusing to disavow its acknowledgment that a governmental unit can waive its immunity by conduct.[3] This case demonstrates that the Court will never conclude that such a waiver actually occurred. I therefore dissent once again.

In this case, Collins answered the County's advertised request for bids to purchase property, tendering a $5,000 earnest money check. The County specifically accepted the bid and cashed the check. Collins deposited the remaining purchase price plus closing costs—$2,554,961.72—with a title company. The County sent Collins a warranty deed and an affidavit for the closing, which Collins executed and returned to the County. Then, ostensibly through a "vote" of the county commissioners, the County refused to authorize the warranty deed's execution by the county judge. As a result, Collins brought suit for breach of contract and specific performance.

Accepting the Court's position that mere execution of a contract does not waive immunity from suit, this case is most surely a waiver by conduct. The County cashed and used the $5,000 earnest money deposit, even though it had no intention of executing the warranty deed. This fact distinguishes this case from every other case that the Court has considered where the governmental unit "failed" to comply with the contract because, in those cases,

1. *See Tex. Dep't of Transp. v. Jones Bros. Dirt & Paving Contractors, Inc.,* 92 S.W.3d 477, 485 (Tex.2002) (Enoch, J., concurring in part and dissenting in part); *Travis County v. Pelzel & Assocs., Inc.,* 77 S.W.3d 246, 252 (Tex. 2002) (Enoch, J., dissenting); *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 862 (Tex.2002) (Enoch, J., dissenting);, *Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 602 (Tex.2001)

(Enoch, J., dissenting); *Tex. Dep't of Transp. v. Aer–Aerotron, Inc.,* 39 S.W.3d 220, 221 (Tex.2001) (Enoch, J., dissenting); *Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 416 (Tex. 1997) (Enoch, J., dissenting).

2. 121 S.W.3d 704.

3. *See id.* at 705; *Fed. Sign,* 951 S.W.2d at 408 n. 1.

the governmental unit defended from the beginning on whether it owed the money.[4] But here, the County never asserted that Collins breached the contract; the County just said it wasn't bound to honor the contract, *and* it kept Collins' earnest money deposit.

The Court, squarely faced with this blatant conduct, runs from its position by noting that the County eventually returned Collins' $5,000, though years later and after the suit had progressed to the summary judgment stage.[5] The Court concludes that this renders moot any relief Collins might have been entitled to had the County retained the deposit.[6] But of course, the controversy wasn't over just $5,000. The controversy was over the contract of sale of the real estate, as a part of which the County took Catalina's earnest money deposit. The controversy is hardly moot. Interestingly, the Court ignores one of the most settled principles in our jurisprudence: once a court acquires jurisdiction, it does not lose jurisdiction by the subsequent unilateral action of a party.[7]

By taking the earnest money and treating it as its own, the County waived its right to assert that it could not be sued on the purchase contract. And once the trial court acquired jurisdiction over the case, that jurisdiction was not lost when the County finally gave the money back to Collins. When the trial court obtained jurisdiction, which it did when Collins filed suit, it had the authority to decide the merits of the entire controversy.

Concerning the merits, the Court concludes that the bidding statute[8] shows that the County had no obligation to close the sale.[9] That's a dangerous holding. Assuming the Court is correct in its interpretation of the bidding statute, that statute simply provides a defense for the County to raise in the underlying proceeding.[10] It does not mean that the County is entitled to summary judgment on its immunity defense—a defense wholly unrelated to whether the County had an obligation to close the sale under the statute.

But more importantly, the bidding statute authorizes a governmental unit not "to accept any bid or to complete a sale or exchange"[11] if the other contracting party has not completed the necessary prerequisites to completing a sale. I would not read the statute to allow a governmental unit to decide unilaterally not to complete a sale when it accepted a bid, kept the earnest money deposit, and the successful bidder already fully performed. Presumably when the county commissioners accepted Collins' bid, agreed to sell the property, and cashed the check, they decided that the deal was in their constituency's best interest. Simply because the county commissioners' membership subsequently changed, that should not render the County immune from liability for failing to perform the obligations it had agreed to perform, especially when the County kept Collins' $5,000 deposit until years after Collins filed suit.

I would reverse the court of appeals' judgment and remand the case to the trial

4.  See, e.g., Pelzel & Assocs., Inc., 77 S.W.3d at 251–52; IT–Davy, 74 S.W.3d at 851–52.

5.  —— S.W.3d at ——.

6.  Id. at ——.

7.  See Flynt v. Garcia, 587 S.W.2d 109, 109–10 (Tex.1979) (per curiam); Isbell v. Kenyon-

Warner Dredging Co., 113 Tex. 528, 261 S.W. 762, 763 (1924).

8.  TEX. LOC. GOV'T CODE § 272.001(d).

9.  121 S.W.3d at 707.

10.  See TEX. LOC. GOV'T CODE § 272.001(d).

11.  Id.

court for proceedings on the merits. Because the Court does otherwise, I dissent. I add this case to the ever-growing "List" of cases in which the Court slams shut the courthouse doors on parties contracting with a governmental unit no matter how egregious the unit's conduct.[12]

12. *See Catalina Dev., Inc. v. County of El Paso,* —— S.W.3d —— (Tex.2003); *Jones Bros. Dirt & Paving Contractors, Inc.,* 92 S.W.3d at 485; *Pelzel & Assocs., Inc.,* 77 S.W.3d at 252; *IT–Davy,* 74 S.W.3d at 863; *Little–Tex Insulation Co.,* 39 S.W.3d at 600; *Aer–Aerotron, Inc.,* 39 S.W.3d at 221; *Fed. Sign,* 951 S.W.2d at 408; *see also City of Houston v. Northwood Mun. Util. Dist. No. 1,* 73 S.W.3d 304, 313 (Tex.App.-Houston [1st Dist.] 2001, pet. denied); *Gendreau v. Med. Arts Hosp.,* 54 S.W.3d 877, 879 (Tex.App.-Eastland 2001, pet. denied); *Denver City Indep. Sch. Dist. v. Moses,* 51 S.W.3d 386, 393 (Tex.App.-Amarillo 2001, no pet.); *Tex. Dep't of Pub. Safety v. Int'l Capital Corp.,* 40 S.W.3d 687, 690 (Tex. App.-Austin 2001, no pet.); *Tex. Dep't of Pub. Safety v. Rivera,* No. 13–01–446–CV, 2001 Tex. App. LEXIS 7681, at *3 (Corpus Christi Nov. 15, 2001, pet. denied) (not designated for publication); *Landry's Crab Shack v. Bd. of Regents,* No. 03–00–00690–CV, 2001 WL 1240832, at *2–3, 2001 Tex.App. LEXIS 6948, at *8–9 (Tex.App.-Austin Oct. 18, 2001, no pet.) (not designated for publication); *Ondemir v. Bexar County Clerk,* No. 04–00–00497–CV, 2001 WL 1136074, at *2, 2001 Tex.App. LEXIS 6488, at *6 (Tex.App.-San Antonio Sept. 26, 2001, pet. denied) (not designated for publication); *O'Dell v. Perry,* No. 03–00–00603–CV, 2001 WL 726387, at *1, 2001 Tex. App. LEXIS 4367, at *2–3 (Tex.App.-Austin June 29, 2001, no pet.) (not designated for publication); *Tex. A & M Univ. Sys. v. AFEX Corp.,* No. 03–00–00222–CV, 2001 WL 193881, at *1–2, 2001 Tex.App. LEXIS 1266, at *4–5 (Tex.App.-Austin Feb. 28, 2001, no pet.) (not designated for publication).