

# NUMBER 13-19-00311-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CITY OF BROWNSVILLE, TEXAS,
TONY MARTINEZ, ROSE M. Z. GOWEN,
RICARDO LONGORIA JR., JOEL MUNGIA,
BEN NEECE AND JESSICA TETREAU,
IN THEIR OFFICIAL CAPACITIES ONLY,                    Appellants,

v.

BROWNSVILLE GMS, LTD. AND
MICHAEL BENNETT,                                      Appellees.

On appeal from the 445th District Court
of Cameron County, Texas

# MEMORANDUM OPINION

Before Justices Benavides, Hinojosa, and Tijerina
Memorandum Opinion by Justice Tijerina

Appellants City of Brownsville, Texas, Tony Martinez, Rose M. Z. Gowen, Ricardo Longoria Jr., Jessica Tetreau, Joel Munguia, and Ben Neece, in their Official Capacities[1] (collectively the City) appeal an order granting a temporary injunction in favor of appellees Brownsville GMS, Ltd. and its general manager, Michael Bennett (collectively GMS). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4). We reverse and remand.

## I. BACKGROUND

GMS provided commercial and industrial waste services to the City for numerous years. In 2011, GMS and the City operated under a five-year license agreement, which expired in late 2016. Following the expiration, the parties extended the agreement on a month-to-month basis.

In early 2017, the City initiated a request for proposal (RFP) for a commercial waste collection license agreement using the Chapter 252 procurement process. *See* TEX. LOC. GOV'T CODE ANN. §§ 252.001–.063 (delineating the purchasing and contracting authority of municipalities). Three applicants responded. The City's staff negotiated a new license agreement with GMS, but the City Commission rejected all RFPs, and no contract with any entity was awarded. Thereafter, the City again extended the month-to-month extension with GMS, and GMS continued to provide commercial and industrial waste services to the City.

In August 2017, the City issued a new RFP pursuant to the Chapter 252 process, and the same three applicants responded. On April 16, 2019, the City Commission, again, rejected all proposals, and no contract with any entity was awarded. Instead, the Commission directed its City Manager to negotiate a new license agreement in the best

---

[1] Martinez, Gowen, Longoria, Jr., Tetreau, Munguia, and Neece were all elected members of the Brownsville City Commission during the events giving rise to GMS's allegations.

interests of the City and to place that proposed agreement on the Commission's agenda for action by the City Commission in the future.

On May 6, 2019, GMS filed "Plaintiff's Verified Original Petition and Application for Temporary Restraining Order and Temporary Injunction." In this pleading, GMS contended that the City committed multiple violations of the competitive procurement process under Chapter 252 and violated the Texas Open Meetings Act (TOMA) under Chapter 551 of the Texas Government Code. *See* TEX. LOC. GOV'T CODE ANN. §§ 252.001–.063; TEX. GOV'T CODE ANN. §§ 551.001–.146 (codifying TOMA). GMS argued that the City violated the local government code "by failing to apply Chapter 252's competitive bidding procedures to the award of the commercial and industrial waste collection contract" and "by awarding the contract to [a third entity] and not GMS." GMS also argued that "the Commission rejected GMS'[s] contract, after it had already awarded the bid, fully negotiated the contract and had GMS execute the contract, as a result of discussion that violated [TOMA]." GMS sought declaratory relief, a temporary restraining order, and a temporary injunction.

That same day, the trial court granted GMS's application for a temporary restraining order in an ex parte proceeding. The court's order granting GMS's application provided, inter alia, that the City was (1) prohibited from taking any action to interfere with or terminate GMS's existing commercial and industrial waste collection contract with the City; (2) prohibited from taking any action to award or execute the City's commercial and industrial waste collection contract with any third party; (3) prohibited from performing any contract with any third party for commercial and industrial waste collection; (4) ordered to produce documents and respond to the expedited discovery requests attached as exhibits to GMS's petition and served by GMS by May 13, 2019; and (5) ordered to appear for

3

depositions to occur on or before May 17, 2019. The order set GMS's application for temporary injunction to be heard on May 20, 2019 before the Honorable Robert Pate. Subsequently, that same day, May 6, 2019, the trial court signed an "Order of Recusal and Referral on Judge's Own Motion" and the Presiding Judge of the Fifth Administrative Judicial Region of Texas assigned Judge Pate to preside over the case.[2]

On May 9, 2016, the City filed its original answer, a motion to quash, and a motion for a protective order, asserting multiple defenses. The City also filed a plea to the jurisdiction principally asserting the trial court lacked subject-matter jurisdiction over GMS's declaratory judgment claims because the City was immune, and GMS could not show sufficient jurisdictional facts to support the Chapter 252 and TOMA claims against the City. On May 10, 2019, the City filed a second motion to quash and motion for protective order. On May 13, 2019, the assigned judge signed fiats setting the City's first and second motions to quash and for the protective order to be heard on May 30, 2019. On May 14, 2019, GMS filed "Plaintiff's Motion for Expedited Telephonic Status Conference, Motion to Extend Temporary Restraining Order[,] Reschedule Temporary Injunction Hearing[,] and Motion to Reset Hearings on Motion to Quash." On May 14, 2019, the City filed a motion to dissolve the temporary restraining order and opposition to GMS's motion to extend the temporary restraining order.

On May 15, 2019, without holding a hearing, the assigned judge issued an "Order Extending Temporary Restraining Order, Resetting Hearing on Temporary Injunction, and Resetting Hearing Date of Defendants' Motions to Quash and for Protective Orders." One day later, Tetreau filed her written "Objection to Assigned Judge," objecting to the

---

[2] The exact sequence of events appears anomalous. However, according to the record, the order granting the temporary restraining order was signed at 10:30 a.m. and filed at 12:10 p.m. The order of recusal was filed at 11:30 a.m. The order of assignment was filed at 2:06 p.m.

4

assigned judge, which the assigned judge overruled stating "[t]he Court has previously executed Orders with respect to this case" and "OVERRULES the objection to Assigned Judge."

On May 24 and May 30, 2019, the trial court held hearings on GMS's request for injunctive relief and heard testimony from GMS's witnesses. The City did not call any witnesses to the stand. On June 6, 2019, GMS filed a verified first amended petition and application for temporary injunction and permanent injunction. On June 13, 2019, after further proceedings, the trial court granted a temporary injunction against the City (1) prohibiting it from terminating GMS's month-to-month existing contract; (2) prohibiting it from executing or performing a contract with any person or entity other than GMS; (3) prohibiting it from conducting an RFP process for commercial and solid waste collection services; and (4) ordering all elected officials, including the City Secretary, to take an online TOMA training course. The order expressly found that the trial court "had statutory authority under both Chapter 252, Section 252.061 of the Texas Local Government Code and [] Section 251.142 of the Open Meetings Act to grant injunctive relief."

This appeal ensued. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (authorizing an appeal of an interlocutory order from a trial court that grants a temporary injunction). In seven issues, the City argues the trial court erred in granting a temporary injunction because: (1) it objected to the assigned judge, who was thus disqualified from presiding over the case and entering the temporary injunction; (2) the underlying temporary restraining order was improperly entered; (3) GMS failed to establish the necessary elements to obtain a temporary injunction; (4) the temporary injunction creates an undue hardship; (5) the relief granted exceeds the relief sought by GMS; (6) GMS had unclean hands; and (7) the injunctive relief order is defective.

5

## II. ASSIGNED JUDGE

By its first issue, the City asserts that the trial court erred in granting the temporary injunction because the assigned judge was disqualified from presiding and entering the order. GMS argues that Tetreau's objection was untimely. We agree with GMS.

To constitute a timely objection, an objection pursuant to this section "must be filed not later than the seventh day after the date the party receives actual notice of the assignment or before the date the first hearing or trial, including pretrial hearings, commences, whichever date occurs earlier."[3] TEX. GOV'T CODE ANN. § 74.053(c); *see In re Canales*, 52 S.W.3d 698, 704 (Tex. 2001) (orig. proceeding). A hearing occurs within the meaning of § 74.053 "when a party files a motion requesting affirmative relief," the judge "considers the merits of the arguments," and the judge rules on the matter. *Perkins v. Groff*, 936 S.W.2d 661, 664 (Tex. App.—Dallas 1996, writ denied) (providing that oral argument is not necessary, and the hearing need not take place in a courtroom while the assigned judge sits on the bench in the presence of counsel); *see In re M.A.V.*, 40 S.W.3d 581, 584 (Tex. App.—San Antonio 2001, no pet.); *see also In re Magnolia Prop. Mgmt.*, No. 13-20-00112-CV, 2020 WL 1887760, at *3 (Tex. App.—Corpus Christi–Edinburg Apr. 14, 2020, orig. proceeding) (mem. op.) (collecting and surveying cases).

On May 14, GMS filed a motion requesting the trial court to hold an expedited telephonic status conference, extend the temporary restraining order, reschedule the temporary injunction hearing, and reset the hearing on the motions to quash. The assigned judge's May 15, 2019 order does just that: denies GMS's request for an

---

[3] The parties do not disagree that the City's objection was filed within seven days after the date that it received actual notice of the assignment. *See* TEX. GOV'T CODE ANN. § 74.053(c). Thus, the timeliness of the objection hinges on whether it was filed "before the date the first hearing or trial, including pretrial hearings, commences." *Id.*

expedited telephonic status conference, extends the temporary restraining order to May 30, 2019, reschedules the temporary injunction hearing to occur on May 30, 2019, and resets the hearing on the motions to quash for May 24, 2019. In this regard, rulings on continuances constitute hearings within the context of the statute. *See Wolfe v. Wolfe*, 918 S.W.2d 533, 542 (Tex. App.—El Paso 1996, writ denied); *Morris v. Short*, 902 S.W.2d 566, 569 (Tex. App.—Houston [1st Dist.] 1995, writ denied). Therefore, under the government code, a hearing occurred within the meaning of § 74.053 when GMS filed a motion requesting affirmative relief, the assigned judge considered the merits of the arguments, and the assigned judge issued its rulings. *See Perkins*, 936 S.W.2d at 664; *see also In re Magnolia Prop. Mgmt.*, 2020 WL 1887760, at *3. One day after the assigned judge's ruling, Tetreau filed an objection to the assigned judge. Accordingly, we conclude that Tetreau's objection to the assignment was untimely. We overrule the City's first issue. Because it is dispositive, we next determine whether GMS established the necessary elements to obtain a temporary injunction. *See* TEX. R. APP. P. 47.1.

### III.    STANDARD OF REVIEW

We review a trial court's order granting or denying a temporary injunction for abuse of discretion. *Henry v. Cox*, 520 S.W.3d 28, 33 (Tex. 2017); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *InterFirst Bank San Felipe v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986) (per curiam); *Super Starr Int'l, LLC v. Fresh Tex. Produce, LLC*, 531 S.W.3d 829, 838 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.). We do not review or decide the underlying merits, and we will not disturb the order unless it is "so arbitrary that it exceed[s] the bounds of reasonable discretion." *Henry*, 520 S.W.3d at 33–34.

7

A trial court abuses its discretion if it rules in an arbitrary manner or without reference to guiding rules and principles. *Butnaru*, 84 S.W.3d at 211; *see Sargeant v. Al Saleh*, 512 S.W.3d 399, 409 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.) (combined appeal & orig. proceeding). A trial court does not abuse its discretion if some evidence reasonably supports its decision. *Butnaru*, 84 S.W.3d at 211; *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 916 (Tex. App.—Dallas 2006, no pet.). We draw all legitimate inferences from the evidence in the light most favorable to the trial court's decision. *Marketshare Telecom*, 198 S.W.3d at 916; *see also Concerned Citizens of Palm Valley, Inc. v. City of Palm Valley*, No. 13-20-00006-CV, 2020 WL 4812641, at *2–3 (Tex. App.—Corpus Christi–Edinburg Aug. 13, 2020, no pet.) (mem. op.).

## IV. NECESSARY ELEMENTS

The City asserts that GMS failed to show a probable right to recovery. According to the City, GMS pleaded "no cause of action for which it can recover the injunctive relief actually sought in its Petition and for which it was awarded in the temporary injunction."

To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204. To establish a probable right to recovery, the applicant must establish it has a cause of action for which it may be granted relief. *See Walling v. Metcalfe*, 863 S.W.2d 56, 57–58 (Tex. 1993); *Reyes v. Burrus*, 411 S.W.3d 921, 924 (Tex. App.—El Paso 2013, pet. denied). The phrase "probable right of recovery" is a "term of art" in the injunction context. *Intercontinental Terminals Co. v. Vopak N. Am. Inc.*, 354 S.W.3d 887, 897 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see Frontera Generation Ltd. P'ship*

8

*v. Mission Pipeline Co.*, 400 S.W.3d 102, 110 (Tex. App.—Corpus Christi–Edinburg 2012, no pet.).

To show a probable right to recovery, an applicant need not show that it will prevail at trial but instead must plead a cause of action and present some evidence that tends to sustain it. *Frontera Generation Ltd. P'ship*, 400 S.W.3d at 110; *Intercontinental Terminals Co.,* 354 S.W.3d at 897. The evidence must be sufficient to raise a bona fide issue as to the applicant's right to ultimate relief. *Frontera Generation Ltd. P'ship*, 400 S.W.3d at 110; *Intercontinental Terminals Co.,* 354 S.W.3d at 897. The trial court has broad discretion in determining whether the pleadings and evidence support a temporary injunction. *Frontera Generation Ltd. P'ship*, 400 S.W.3d at 110; *Intercontinental Terminals Co.,* 354 S.W.3d at 898. In this case, GMS sought relief for violations of Chapter 252 of the Texas Local Government Code and TOMA. *See* Tex. Loc. Gov't Code Ann. § 252.021 (delineating the municipality's competitive requirements for purchases); Tex. Gov't Code Ann. §§ 551.001–.146 (codifying TOMA). We examine these causes separately.

A.    **Chapter 252**

1.    **Authority to Reject Bids**

In its pleading, GMS argued that the City violated Chapter 252 of the Texas Local Government Code "by failing to apply Chapter 252's competitive bidding procedures to the award of the commercial and industrial waste collection contract." The City claims Chapter 252 grants it the authority to reject all bids, so GMS's argument that the City failed to apply Chapter 252 fails.

Chapter 252 grants the City authority to "reject any and all bids." *See* Tex. Loc. Gov't Code Ann. § 252.043. Thus, the statute confers on the City the discretion to reject GMS's bid, and the City did so. *See Associated Gen. Contractors of Tex., Inc. v. City of*

9

*Corpus Christi*, 694 S.W.2d 581, 583 (Tex. App.—Corpus Christi–Edinburg 1985, no writ) ("Appellants' position ignores the basic right of the City of Corpus Christi to reject any and all bids and to determine the most advantageous bid for the city."); *A & A Constr. Co. v. City of Corpus Christi*, 527 S.W.2d 833, 835 (Tex. App.—Corpus Christi–Edinburg 1975, no writ) (holding that a competing bidder had no right to a contract award in light of § 252.043(d), which gave the city discretion to "reject any and all bids"). Consequently, GMS "has no right, probable or vested, to the award of the contract." *City of Corpus Christi,* 527 S.W.2d at 835 ("Because the appellant submitted a late bid which was rejected by the city, and because the city had the authority to so reject under statute, we hold that the trial court did not abuse its discretion when it denied appellant's requested temporary injunction against the city.").

GMS asserted that the City "awarded the contract to GMS, and GMS accepted and executed the contract. However, the City Commission refused the negotiated and executed contract with GMS." This allegation, "without more, amount[s] only to disagreements with the outcome of determinations by the City . . . that [was] well within [its] discretion to reach." *City of Austin v. Util. Assocs., Inc.*, 517 S.W.3d 300, 310 (Tex. App.—Austin 2017, pet. denied). Approving or rejecting a contract is a discretionary act. *See Catalina Dev., Inc. v. County of El Paso*, 121 S.W.3d 704, 706 (Tex. 2003) (providing that the newly elected commissioners court was immune from suit where it "acted within its discretion to protect the perceived interests of the public" in rejecting a contract approved by the predecessor).

GMS further claimed the City acted *ultra vires* of Chapter 252's requirements "by awarding the contract to [a third party] and not GMS . . . and fail[ing] to award the contract to 'the lowest responsible bidder or to the bidder who provides goods or services at the

best value for the municipality.'" *See* TEX. LOC. GOV'T CODE ANN. § 252.043(a). An *ultra vires* "suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *City of Austin*, 517 S.W.3d at 310–11. While we agree with GMS that Chapter 252 requires a contract "be awarded to the responsible offeror whose proposal is determined to be the most advantageous to the municipality considering the relative importance of price and the other evaluation factors included in the request for proposals," *see* TEX. LOC. GOV'T CODE ANN. § 252.043(a), the City's determination of the responsible offeror "turns on multiple underlying determinations that the City Defendants were necessarily empowered to make." *City of Austin*, 517 S.W.3d at 311.

In a case analogous to the issues here, the Austin Court of Appeals explained:

> But Plaintiffs overlook that the identity of the "responsible offeror" to whom "the contract must be awarded" turns on multiple underlying determinations that the City Defendants were necessarily empowered to make—it is the offeror "whose proposal is *determined to be* the most advantageous to the municipality *considering* the relative importance of price and the *other evaluation factors* included in the request for proposals." While Chapter 252 may require that the City Defendants weigh these specified considerations and factors, it does not limit their discretion in the outcome of these judgment calls. The above allegations of Plaintiffs would implicate the outcome of the City Defendants' determinations, not their legal authority to reach that outcome (internal quotation marks omitted).

*Id.* (citing TEX. LOC. GOV'T CODE ANN. § 252.043(h)). We find this guidance persuasive.

> Where, as here, a governmental body has been delegated authority to make some sort of decision or determination, immunity jurisprudence has long emphasized a critical distinction between alleged acts of that body that are truly *ultra vires* of its decision-maker authority, and are therefore not shielded by immunity, and complaints that the body merely 'got it wrong' while acting within this authority, which are shielded.

11

*Id.* at 310. Therefore, we conclude that the City "had the right to select the bid most advantageous" according to underlying determinations that the City was empowered to make and "reject all other bids" in accordance with the statute. *City of Corpus Christi*, 694 S.W.2d at 583. Accordingly, we agree with the City that Chapter 252 grants it the authority to reject all bids, and GMS's complaint—that the City violated Chapter 252 by not awarding GMS the contract—fails.

### 2. No Probable Right to Relief Sought

Even if GMS had pleaded a viable cause of action, it failed to demonstrate a probable right to the relief sought. GMC seeks to prohibit the City from taking any action to interfere with GMS's month-to-month agreement. However, the only relief available under Chapter 252 is to bar performance of an improperly procured contract. TEX. LOC. GOV'T CODE ANN. § 252.061. In other words, the trial court cannot compel the City to continue doing business with GMS. *See id.*

Section 252.061 provides that if "a contract is made without compliance with this chapter, it is void and the performance of the contract . . . may be enjoined by any property tax paying resident of the municipality." *Id.* Even if GMS had asserted facts that would constitute *ultra vires* conduct by the City's decision-making authority, GMS "would still face an additional jurisdictional hurdle," for it seeks remedies beyond the limited scope of § 252.061. *See City of Austin*, 517 S.W.3d at 315; *see also* TEX. LOC. GOV'T CODE ANN. § 252.061. Here, GMS requested that the trial court prohibit the City from entering into or performing under a contract for commercial or industrial solid waste collection services with any entity other than GMS. As a result, the trial court barred the City from taking any action to interfere with or terminate GMS's existing commercial and industrial waste collection contract with the City.

12

As previously highlighted, the injunctive relief authorized by § 252.061 does not extend to the subject matter of the relief GMS seeks, which is calculated to secure the contract award for GMS upon the invalidation of the award to another entity. *See City of Austin*, 517 S.W.3d at 315 ("The injunctive relief authorized by § 252.061 extends only to barring performance of an improperly procured contract and makes no mention of a further remedy of re-awarding the contract to any other vendor."). GMS provided waste services to the City on a month-to-month basis, and the trial court cannot compel the City to continue doing business with GMS. Accordingly, we agree with the City that the *only* relief available under Chapter 252 is to bar performance of an improperly procured contract. Without a probable right to the relief sought, GMS was not entitled to a temporary injunction. *See Butnaru*, 84 S.W.3d at 204.

### 3. No Contract

Finally, GMS's claim suffers from another fatal defect—there was no contract between the City and one of GMS's competitors. GMS's basis for an injunction against the City was § 252.061, but as the City notes, a party may enjoin performance of a contract "[i]f *the contract* is made without compliance with this chapter." *See* TEX. LOC. GOV'T CODE ANN. § 252.061 (emphasis added). Thus, GMS's claims are not ripe until such a contract is in place. *See id.* Furthermore, if a contract is made without compliance, injunctive relief under § 252.061 provides for the contract to be "void and the performance of the contract, including the payment of any money under the contract, may be enjoined by . . . any property tax paying resident of the municipality." *See id.*

Here, GMS seeks to undo or invalidate a contract that was never awarded. Instead, the City Commission rejected all RFPs. As GMS concedes, the City "was finalizing" a contract with another entity but ultimately did not award such a contract and that GMS is

13

"currently performing month-to-month under the terms of its 2011 contract with the City and has been month-to-month under that contract since October 2016." Therefore, there is no contract to declare void or enjoin. *See id.* Similarly, there is no effective injunctive relief that would have any practical effect on the controversy between the parties because no contract was awarded by the City Commission.

In this regard, GMS invites us to adopt "[a] more reasonable interpretation of Section 252.061[,] once a plaintiff becomes aware of a contract that would be void under Chapter 252, the plaintiff may seek to enjoin the performance of the contract—whether or not the municipality has formally signed the contract or put it in place." GMS does not cite any authority construing the statute in this light, and we have found none. The statute does not provide for injunctive relief without an executed contract, while in the contract formation process, or prior to a contract being awarded. *See* TEX. LOC. GOV'T CODE ANN. § 252.061. As this Court has previously said, "[i]t is basic contract law that a bid by one is simply an offer and is not binding until accepted by another." *City of Corpus Christi*, 527 S.W.2d at 835. Furthermore, it would be inconsistent with the express terms of the statute, not to mention inefficient, to allow disappointed bidders to prematurely request injunctive relief to enjoin or declare void proposed contracts that have yet to be awarded. *See City of Austin*, 517 S.W.3d at 315 (providing that the injunctive relief authorized by § 252.061 extends only to barring performance of an improperly procured contract). Because there is no contract in place, we are unable to determine whether it was made "without compliance to Chapter 252." *See* TEX. LOC. GOV'T CODE ANN. § 252.061. We decide this argument in favor of the City.

### 4. Conclusion

Based on the allegations in GMS's own pleadings, we conclude the following: (1) the City had the authority to reject all bids; (2) the trial court awarded relief beyond the scope of Chapter 252 because Chapter 252 does not authorize affirmative relief; and (3) there was no contract in place to scrutinize whether it was made "without compliance." *See id.* Therefore, GMS did not show that it has a probable right to recovery under Chapter 252 for which it may be granted relief. We sustain the City's third issue, in part, as it relates to Chapter 252. We next examine the TOMA causes of action to determine whether GMS has established a probable right to recovery.

### B. TOMA

GMS alleged that several of the City's actions were TOMA violations. The City does not challenge whether GMS offered any evidence of TOMA violations, thereby raising a fact issue as to whether TOMA was violated. Instead, the City contends that GMS failed to show any potential relief that would entitle it to a probable right of recovery under TOMA because GMS seeks remedies that are not available under TOMA. In its petition for a temporary injunction, GMS sought an order: (1) "prohibiting [the City] from terminating GMS's existing contract"; (2) prohibiting the City from "executing a contract for commercial and industrial waste collection with [a third entity]"; and (3) prohibiting the City from "performing under the contract with [a third entity]."

TOMA § 551.141 expressly provides that "[a]n action taken by a governmental body in violation of this chapter is voidable." TEX. GOV'T CODE ANN. § 551.141. Section 551.142 expressly permits interested persons to obtain mandamus or injunctive relief "to stop, prevent, or reverse a violation or threatened violation of this chapter by members of

a governmental body" by rendering "voidable" actions taken in violation of TOMA. *Id.* § 551.142; *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 553 (Tex. 2019).

Here, the trial court did not void any actions taken at the City Commission meetings as required by § 551.141. *See* TEX. GOV'T CODE ANN. § 551.141. Instead, the trial court specifically: (1) restrained the City from terminating GMS's existing month-to-month contract; (2) prevented the City from executing a contract for commercial or industrial solid waste collection services with any entity other than GMS; (3) enjoined the City from conducting an RFP or any similar process for a commercial or industrial solid waste collection contract pursuant to GMS's request. This relief is beyond the scope of relief as provided for in § 551.141 because TOMA only allows for the voiding of actions which were approved in violation of TOMA. *See id.*; *Point Isabel Indep. Sch. Dist. v. Hinojosa*, 797 S.W.2d 176, 182 (Tex. App.—Corpus Christi–Edinburg 1990, writ denied) (providing that "only those actions in violation of the [TOMA] may be voided."). Because TOMA merely provides a basis for voiding specific acts which were approved in violation of TOMA, the trial court has no authority to force the City to remain in contract with GMS or enjoin the City from entering a contract with another entity in the future. *See* TEX. GOV'T CODE ANN. § 551.141; *Point Isabel Indep. Sch. Dist.,* 797 S.W.2d at 182. As previously emphasized, there is no existing contract to declare void or enjoin under TOMA; therefore, GMS does not have a right to relief under TOMA. *See Point Isabel Indep. Sch. Dist.,* 797 S.W.2d at 182 ("The intent of the legislature, therefore, appears to be that only specific acts which violate [TOMA] are subject to being declared void."). Thus, we conclude that the trial court abused its discretion in providing temporary injunctive relief under TOMA, and we accordingly sustain the City's third issue as it relates to TOMA. *See* TEX. GOV'T CODE ANN. § 551.141; *see also City of Plano v. Hatch*, 584 S.W.3d 891, 895–96 (Tex.

16

App.—Dallas 2019, no pet.) (providing that § 551.141 and § 551.142 "together define the scope of TOMA's limited waiver of immunity").

## C.    Conclusion

We conclude that GMS did not establish the necessary elements to obtain a temporary injunction. Accordingly, we sustain the City's third issue in its entirety as it relates to Chapter 252 and TOMA.[4]

## V.  CONCLUSION

We reverse the trial court's order granting the temporary injunction, we dissolve the temporary injunction, and we remand the cause to the trial court for further proceedings.

JAIME TIJERINA
Justice

Dissenting Memorandum Opinion
by Justice Gina M. Benavides.

Delivered and filed on the
6th day of May, 2021.

---

[4] We need not address the City's remaining issues as they are not dispositive. *See* TEX. R. APP. P. 47.1.