Elbert S. COX and Robert D. Spellings, Appellants,

v.

GUARANTY NATIONAL BANK et al., Appellees.

No. 1337.

Court of Civil Appeals of Texas, Corpus Christi.

April 20, 1978.

Rehearing Denied May 2, 1978.

Harry F. Maddin, Maddin, White & Brin, Inc., Corpus Christi, for appellants.

C. Edwin Prichard, Jr., Prichard, Peeler & Smith, Corpus Christi, for appellees.

## OPINION

BISSETT, Justice.

This is a suit for damages against Guaranty National Bank and Trust of Corpus Christi, George F. Haney and Larry A. Stroud, defendants in the trial court, and to temporarily enjoin the defendants from selling at public vendue under powers of sale in several Deeds of Trust, four parcels of land owned by Elbert S. Cox and Robert D. Spellings. Hearing was had upon the Application for Temporary Injunction, and the trial court, by an order rendered on February 6, 1978, denied the said Application. Cox and Spellings have appealed.

For convenience of identification, the four parcels of land will be referred to as follows:

1. "Haaker" Tract—25 acres, more or less, located on the Crosstown Expressway in Corpus Christi, Texas;

2. The "Island" Property—located on Padre Island, Texas;

3. The "Wardner Interest"—a 1/48th undivided interest in the Wardner Ranch, consisting of 8,000 acres, more or less, located in the counties of Nueces, Kleberg, and Jim Wells, Texas; and

4. The "Houston Property"—a commercial lot in Deer Park, Harris County, Texas.

Cox, Spellings and others originally acquired an interest in the Haaker Tract in 1973. Thereafter, Cox, Spellings and others obtained refinancing with Guaranty National Bank and Trust Company of Corpus Christi, hereinafter referred to as "Bank", in the amount of $630,000.00. In 1974, Cox and Spellings participated in the purchase of the Island Property, and as a part of the consideration and purchase price obtained a loan of $1,850,000.00 from the Bank. In the negotiations, Cox and Spellings dealt with defendant Mr. Haney, an officer of the Bank. In June, 1976, the debts of Cox and Spellings were reorganized into a Loan Agreement, effective June 1, 1976, and signed by Cox, Spellings and the Bank; the other debtors were relieved of further obligations. Under the terms of the Loan Agreement $2,700,000.00 of principal debt was cross-collateralized and secured by then existing Deeds of Trust on the four properties. The total debt became due and payable, with interest thereon, on January 1, 1978. The total debt was composed of notes in the amounts of $1,850,000.00, $630,000.00, $80,000.00, and $140,000.00, respectively. The debt was not paid on January 1, 1978, and notices of sale pursuant to the Deeds of Trust were posted. Cox and Spellings contend that defendant Haney, Trustee under the aforesaid Deeds of Trust, should be temporarily enjoined from carrying out the non-judicial sale.

As one of the grounds for the issuance of a temporary injunction, Cox and Spellings assert that the Bank broke its promise to use its influence in an attempt to bring about a settlement between the State of Texas and Cox and Spellings concerning the Haaker Tract. In 1974, Spellings began negotiations with the State of Texas to determine the boundaries of the Haaker Tract, and after arrangements which Spellings considered to be satisfactory were made, he and Cox acquired the Haaker Tract, and refinanced the loan with the Bank on February 20, 1974. Cox and Spellings took out an owner's title policy thereon with Lawyers Title Insurance Company, hereinafter referred to as "Lawyers Title", which contained an exemption from claims by the State. The Bank also took out a mortgagee's policy on the Haaker Tract with the same company. At that time, Spellings had also discussed with Lawyers

Title the potential claim of the "Newport" heirs, who, apparently, claimed some interests in the Haaker Tract, but Spellings concluded that two prior lawsuits had extinguished those claims. The policy with Lawyers Title did not exempt the "Newport" claim. Thereafter, the State through the Attorney General of Texas, filed suit on December 24, 1975 against Cox and Spellings, and included therein the "Newport" claimants. The State, according to Spellings, questioned the jurisdictional basis of the prior suits involving those claimants. Cox testified that Mr. Morton, an officer in the Bank, told him that the Bank could help him with this suit, since it had friendly relations with State officials. Cox did not recall whether this conversation occurred at the reorganization meeting or thereafter, but in any event the Bank did nothing to assist Cox and Spellings in the settlement of the suit. In addition, Cox and Spellings demanded that Lawyers Title defend them in the suit, which the Company agreed to do. Nevertheless, Cox and Spellings sued Lawyers Title since there was no "Newport" exemption and named the Bank as an involuntary plaintiff. They seek recovery in excess of $9,000,000.00.

As another ground for the granting of this application for a temporary injunction, Cox and Spellings contend that the Bank, in attempting to foreclose their Deed of Trust liens on the four parcels of land, interfered in the contract and business relationship between them and W. R. Grace Land Company, hereinafter called "Grace". Negotiations between Cox and Spellings and Grace for the purchase of the Haaker Tract began in December, 1976. On December 10, 1976, Grace submitted an option contract for consideration by Cox and Spellings, but neither executed the contract. Apparently, Cox conversed with officials of the Bank concerning whether or not he should sign the option contract. Haney testified that he was aware of negotiations concerning the Haaker Tract between Cox and Spellings and Grace. The position taken by the Bank during such negotiations is not made clear by the record. Cox testified that the Bank objected to the first option contract since

the terms were too long, and, as a consequence, a shorter term was worked out by Grace and was submitted to Cox on January 10, 1976, some ten days after payment was due on the promissory notes according to the Loan Agreement. Cox testified that Morton, an officer of the Bank, informed him at about that time that the Bank did not want to do anything to change the status quo unless all the interest due was paid. Spellings testified that Mr. Nelly, another officer of the Bank, told him in a telephone conversation: "Well, there's no reason for us to talk unless you can pay the interest", but later told him: "You should sign the contract . . . you have title to the property."

On January 16, 1976, Haney posted notices of foreclosure sale and sent a letter to Grace and advised it that the intended sale included the Haaker Tract. Haney later informed an attorney for Grace that the Haaker Tract had been cross-collateralized for the entire indebtedness. Cox executed the option contract on January 17, 1976, after notice for the trustee's sale had been posted. Shortly thereafter, Grace refused to proceed further.

John Thomason, the real estate broker who handled negotiations between Cox and Spellings and Grace testified that the only objection which Grace raised during negotiations was the inability of Cox and Spellings to deliver title. Under the option contract Grace had an opportunity to take thirteen acres of the Haaker Tract at $1.15 per foot or the whole tract at $1.00 per foot. The option contract, as submitted to Cox on January 10, 1976, covered a period of several months.

Cox and Spellings also assert that the Deed of Trust on the Wardner Interest is invalid and the pending foreclosure sale on their interest therein should be enjoined because under the terms of an Operating Agreement dated November 7, 1973, an owner of an undivided interest could not sell his interest therein to a third party without first giving the other owners written notice of the proposed sale, who had an option to buy such interest under the same terms offered by the third party.

The Bank was delivered a copy of the Operating Agreement at the time of the reorganization of the debt in June, 1976. Contemporaneously with the execution of the Loan Agreement, EBCO, Inc., acting by and through its president, executed a Deed of Trust, as mortgagor, to Haney, as Trustee for the Bank, covering the Wardner Interest. The Deed of Trust expressly provided: "To the extent of conflict between said Loan Agreement and this instrument, the provisions of said Loan Agreement shall control". At that time Cox and Spellings were the only stockholders in EBCO, Inc. The record does not show that any of the "other owners" of the Wardner Ranch were notified of either the execution of the Deed of Trust by EBCO, Inc., or of the posting of notice of sale by the trustee. Neither EBCO, Inc., nor any of such "other owners" are parties to this suit.

On March 1, 1978, this Court granted an application by Cox and Spellings for temporary injunction which enjoined the pending trustee's sale in order to preserve the subject matter of the litigation pending the appeal from the denial of the temporary injunction by the trial court as authorized by Tex.Rev.Civ.Stat.Ann. art. 1823 (1964). The transcript, at the time of the hearing and subsequent order, had been filed with this Court. All procedural requisites necessary to invoke the jurisdiction of this Court had been fulfilled. We find ample authority for granting relator's application for temporary injunction in a case such as the one before us. *Pendleton Green Associates v. Anchor Savings Bank*, 520 S.W.2d 579, 582 (Tex.Civ.App.—Corpus Christi 1975, no writ); *Padgett v. Mutual Building & Loan Association*, 504 S.W.2d 535, 538 (Tex.Civ. App.—Fort Worth 1971, no writ). The following language in the *Pendleton* decision is particularly persuasive:

". . . If respondents sell the subject property at a trustee's sale while the appeal is still pending in this Court, the appeal will become moot and our jurisdiction over the pending appeal will have been unlawfully invaded and its subject matter destroyed, since there would then be no way we could enforce our judgment

or decree in the event the relators should prevail in their appeal." Id. at 582.

■ In granting the temporary injunction in the instant case, this Court also ordered that petitioners file a bond in the amount of $50,000.00 in order to protect defendants from possible loss. While this Court is under a duty to protect the other parties from possible loss, we have some discretion in setting the amount of the bond. We decided that a bond of $50,000.00 would adequately protect the defendants against substantial financial loss. *Pendleton*, supra, at 583.

■ Cox and Spellings urge in their first point that the trial court erred in refusing application for temporary injunction since such constitutes an abuse of discretion as a matter of law, or, in the alternative, that such refusal is against the great weight and preponderance of the evidence as to be clearly an abuse of discretion. The point is multifarious and is not in compliance with Rule 418, T.R.C.P. See *Barber v. Corpus Christi Bank & Trust*, 506 S.W.2d 254 (Tex. Civ.App.—Corpus Christi 1974, no writ); *Garrett v. Standard Fire Ins. Co., Etc.*, 541 S.W.2d 635 (Tex.Civ.App.—Beaumont 1976, no writ). The point is also without merit.

■ Cox and Spellings assert that a sale which may tend to cause the sale of land at less than its market value, coupled with the bidding of a grossly inadequate price, is sufficient to enjoin a foreclosure sale under a Deed of Trust. They ask this Court to hold in this case that if a foreclosure sale of the subject property is allowed to take place under the Deeds of Trust sought to be enforced, the mortgaged property might be sold for an inadequate price on the ground denominated in oral argument as "prospective gross inadequacy". They do not challenge the intended sale on the basis that notices of posting were in some manner insufficient or irregular; they say that the Bank might be the only bidder present at the sale, and that if such is the case, the Bank intends to bid an amount far below appraised values of the involved lands, which would be inequitable to them. This

is pure speculation. The point amounts to a complaint that the amount of money bid at the sale might not be satisfactory to them. This Court has no way of determining in advance how many prospective purchasers will appear at the foreclosure sale, nor what they will bid.

we next address the second step of the asserted theory that irregularities accompany the prospective inadequacy of price. It should be noted from the outset that Cox and Spellings do not question the fact that the Bank has complied with the terms of the instrument pertaining to the power of sale granted therein; instead, they challenge defendants' actions with respect to other matters. The argument that all defendants should be enjoined from having the foreclosure sale since notice was given to Grace that the Haaker Tract was cross-collateralized for unpaid debts of several million dollars constitutes such an irregularity that authorizes the enjoining of the proposed foreclosure sale is without merit. The information imparted to Grace was accurate. It has not been shown that the information would have affected Grace's actions prior to the foreclosure sale. The only evidence on this point was that Grace was not going to exercise the option until Cox and Spellings could deliver title. If it may be inferred that Grace was awaiting settlement of the suit involving the title to the Island tract, it is apparent no such settlement was reached prior to the designated time of the foreclosure sale.

Cox and Spellings have shown neither a right to expect Grace to exercise the option to buy the Haaker Tract prior to the foreclosure sale (when plaintiffs' interest in the tract would be lost), nor that Grace would not have received the same information through other channels prior to all times pertinent to this suit. Neither loss nor harm has been shown. 33 Tex.Jur.2d, Interference, § 2 (1962).

Cox and Spellings and the Bank did not contract that the Bank would defend their title to the four tracts of land as a condition to foreclosure. The fact that the Bank showed an interest in Cox and Spell-ings' predicament cannot be transfigured into an obligation to defend their title in the suit. While the Bank may have a mortgagee's policy with Lawyers Title, the policy is not in evidence and the obligations thereunder are not in the record. The rights and liabilities under such mortgagee's policy have no bearing on the issue here presented. There is no allegation of fraud or conspiracy on the part of the defendants. See generally *Turner v. Neel*, 231 S.W.2d 660, 661 (Tex.Civ.App.—San Antonio 1950, writ ref'd n. r. e.).

It is established as a fact that Cox furnished the Bank with a written statement, which advised the Bank that he and Spellings were the "sole owners of stock in EBCO, Inc."; that they consented to the execution of the aforesaid Deed of Trust on the Wardner Interest by EBCO, Inc., as security to pay the several notes described in the Loan Agreement, "in the total aggregate sum of $2,700,000.00, representing indebtedness of Robert D. Spellings and/or Elbert S. Cox to your bank". The execution of the Deed of Trust by the President of EBCO, Inc., was expressly authorized by a resolution of the corporation's Board of Directors.

The "other owners" of the undivided interests in the Wardner Ranch do not complain of the intended foreclosure of the Deed of Trust liens. Their rights, if any, in the issue here presented are not before us in this appeal, and we express no opinion thereon or relevant thereto.

The fair market value of the affected properties is immaterial to the disposition of this appeal. The disclosure of the proposed foreclosure proceedings to Grace is not, under the record before us, a ground for enjoining the trustee's sale. The sincerity of Cox in trying to dispose of the properties in order to raise enough money to pay the debt owed to the Bank is not in issue. The trial court properly excluded all evidence relating to appraised value or market value of the subject properties. The evidence concerning the effect that the disclosure by the Bank to Grace of the posting of

notices of the intended trustee's sale of the lands "would have on a potential buyer under option contract to buy" would not authorize the issuance of the requested injunction. The Deeds of Trust are valid on their face. They are enforceable until some valid reason is shown by clear and compelling evidence why they should not be enforced. See *Justice Mort. Inv. v. C. B. Thompson Const. Co.*, 533 S.W.2d 939 (Tex. Civ.App.—Amarillo 1976, writ ref'd n. r. e.); *Rogers Ranch Co., Inc. v. Darwin*, 89 S.W.2d 828 (Tex.Civ.App.—San Antonio 1936, no writ); *Lincoln Nat. Life Ins. Co. v. Freudenstein*, 87 S.W.2d 810 (Tex.Civ.App. —San Antonio 1935, no writ); *Reisenberg v. Hankins*, 258 S.W. 904 (Tex.Civ.App.— Amarillo 1924, writ dism'd).

We now consider the argument wherein it is claimed that the trial court, in denying the Application for Temporary Injunction, abused its discretion. This Court, speaking through Chief Justice Nye, in *Long v. Castaneda*, 475 S.W.2d 578, 581 (Tex.Sup.1971, writ ref'd n. r. e.), said:

> "The rule of law in Texas is that the trial court is clothed with broad discretion in determining whether to issue or whether not to issue a temporary injunction to preserve the rights of the parties pending a final trial of the case. When that discretion is exercised, its orders should not be overturned unless the record discloses a clear abuse of discretion. *Texas Foundries, Inc. v. International Moulders & F. Workers' Union*, 151 Tex. 239, 248 S.W.2d 460 (Tex.Sup.1952). . . ."

Cox and Spellings have failed to show the requirements of a probable right and probable injury as a basis for the imposition of a temporary injunction. The trial court did not abuse its discretion by denying the application for a temporary injunction. We have carefully considered all of the points of error which have been brought forward by Cox and Spellings, and they are overruled.

The judgment of the trial court is AFFIRMED.