RANCHOS REAL DEVELOPERS, INC., Appellant,

v.

The COUNTY OF EL PASO, Catalina Development, Inc., and David Escobar, Trustee, Appellees.

No. 08–04–00014–CV.

Court of Appeals of Texas, El Paso.

April 22, 2004.

---

David R. Pierce, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for Appellant.

John P. Mobbs, Harrel L. Davis, III, Krafsur, Gordon, Mott, P.C., Luther Jones, Jones & Georges, El Paso, for Appellees.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## OPINION

SUSAN LARSEN, Justice.

This is an interlocutory appeal from the denial of a temporary injunction to prevent the sale of certain real property. We previously issued a stay of the proceedings in the trial court pending our disposition of the appeal or further order of this Court. The matter is before us now to determine the appropriate amount and form of security to secure the stay.

### PROCEDURAL BACKGROUND

The County of El Paso agreed to sell a parcel of land to Gregory Collins and Catalina Development, Inc., but then refused to complete the transaction. *See Catalina Dev., Inc. v. County of El Paso,* 105 S.W.3d 643, 644–45 (Tex.App.-El Paso 2002), *aff'd,* 121 S.W.3d 704 (2003). Years of litigation ensued. *See id.; Collins v. County of El Paso,* 954 S.W.2d 137 (Tex. App.-El Paso 1997, pet. denied). On May 8, 2003, the Texas Supreme Court upheld the conclusion of this Court and the trial court that the County had sovereign immunity from the breach-of-contract suit brought by Collins and Catalina. *See Catalina,* 121 S.W.3d at 704–05. On November 17, 2003, the supreme court denied rehearing in the case. Meanwhile, Collins and Catalina assigned their rights in the transaction to David Escobar, as trustee for a joint venture composed of Carefree Homes and Tropicana Homes. In exchange for the assignment, the joint venture agreed to give Collins and Catalina $150,000 and a 15% interest in the property if the transaction closes.

On December 22, 2003, Escobar, Collins, Catalina, and the County entered into a Rule 11 agreement. In consideration for the dismissal and release of all claims related to the property and the promise not to seek a writ of certiorari from the United States Supreme Court, the County agreed to sell a portion of the property to the joint venture for $3,040,000 or the appraised value of the property, whichever is greater. The joint venture also agreed to reimburse the County for the attorney fees and court costs it had incurred in the underlying litigation.

On December 29, 2003, Ranchos Real Developers, Inc. filed a petition for a temporary restraining order, temporary injunction, and permanent injunction prohibiting the sale of the property. Ranchos Real alleged that the sale would violate statutory provisions governing how County land may be sold. Ranchos Real also alleged that it was interested in purchasing

the property and would pay more than what the joint venture was paying. The trial court issued a temporary restraining order and Ranchos Real deposited $10,000 into the registry of the court to secure the order.[1] On January 21, 2004, the trial court signed an order denying the temporary injunction, and Ranchos Real filed a notice of appeal.

On January 23, 2004, Ranchos Real filed in this Court an Emergency Motion for Temporary Restraining Order and Writ of Injunction, seeking to enjoin the closing of the sale, which was scheduled to occur that day. We stayed all proceedings related to the property and denied Ranchos Real's motion as moot. The County and Escobar later filed a Motion to Require Security, arguing that Ranchos Real should be required to post $3,287,363.27—the amount the joint venture was to pay for the property—to secure the stay. Ranchos Real naturally requested that we deny the Motion to Require Security, or alternatively that we allow the $10,000 already posted for the temporary restraining order to secure the stay. We ordered the trial court to conduct an evidentiary hearing to make findings and recommendations regarding the amount and form of the security.

## THE EVIDENTIARY HEARING

At the hearing, Escobar testified that the appraised value of the property is $3,200,000 and that the County incurred approximately $87,000 in attorney fees. Therefore, the purchase price for the property under the Rule 11 agreement turned out to be approximately $3,287,000. Escobar stated that the joint venture had set aside the funds for the closing on January 23 and that it was paying a net interest rate of 6% per year, or $525 per day, to

keep the funds available in the bank to close the transaction as soon as our stay is lifted. Escobar did not have any loan documents to support his testimony. He did not know how much interest the funds were earning in the bank or what bank made the loan to the joint venture. Doug Schwartz, one of the principals of Ranchos Real, testified that banks generally do not transfer funds for a loan until the closing of the transaction; if the transaction does not close, no loan is made.

Escobar further testified that even if we lifted our stay and allowed the parties to close the sale, the joint venture would not be able to develop the property as long as this suit is pending because the suit places a cloud on the title. He claimed that the joint venture stood to lose $2,000,000 per year as a result of the "pendency of this litigation" because the joint venture would have a stream of income of approximately that amount once it begins developing the property. According to Escobar, the parties may never close the transaction as a result of this suit. He estimated that the joint venture could lose $10,000,000 if the transaction never closes.

The County Auditor, Edward Anthony Dion, testified that if the County invested $3,200,000 it would earn $112.89 per day. He also testified that a piece of property worth $3,200,000 would generate $12,800 per year in tax revenue for the County if it were owned by a private entity. If homes were built on the property, additional tax revenue would be generated.

Escobar's attorney, John Mobbs, testified regarding the time it might take for this Court and the supreme court to render a final decision in this case. He believed that we would have a decision by

1.  Ranchos Real's attorney has represented to this Court that the $10,000 remains in the registry of the trial court.

August of this year. If the supreme court grants review, he believed that April or May of 2005 is the soonest that a final decision would be made. Mobbs also testified that he had charged Escobar $4,000 in attorney fees and that he anticipated charging an additional $10,000 to $12,000 in fees to complete the appeal and another $10,000 if the supreme court grants review. Mobbs did not segregate the fees attributable to the stay from the fees charged for other matters in the case.

Escobar, an attorney himself, testified that he had charged the joint venture $12,000 in attorney fees related to this case. Although he did not segregate the fees attributable to the stay in his testimony, his timesheet, which was admitted as an exhibit, shows that 10 hours of work at $500 per hour was attributable to the stay. Luther Jones, another attorney for Escobar as well as Catalina, testified that he had charged his clients $27,225 in attorney fees related to this case. As with Escobar, his timesheet was admitted as an exhibit. From the timesheet, we can discern 11.6 hours at $500 per hour related to the stay. Finally, Morgan Broaddus, the County's attorney, testified that he had charged the County $30,000 in attorney fees related to this case and he anticipated charging an additional $22,500 to complete the appeal and up to $23,500 for proceedings in the supreme court. He did not segregate the fees related to the stay from his other fees.

## The Trial Court's Findings and Recommendation

The trial court found that the joint venture would have paid the County $3,287,363.27 for the property if the transaction had closed. The court also found that if this case is pursued to the Texas Supreme Court, the soonest a decision would be made is April or May of 2005,

which would be approximately 16 months from the date of our stay.

Regarding the County's potential losses, the court found that the County would receive $112.89 per day in interest on the purchase price and $12,800 per year in taxes. Multiplying these amounts by 16 months, the court determined that the County stood to lose $54,187.20 in interest and $17,066.66 in taxes.

Regarding the potential losses of Escobar and the joint venture, the trial court found that they were paying 6% per year, or $525 per day, to keep the funds for the transaction in liquid form. This amounts to a loss of $252,000 over 16 months.

Regarding Catalina's potential losses, the trial court found that if the transaction had closed, Catalina would have received $150,000 plus a 15% interest in the property for the assignment of its rights. Therefore, Catalina stood to lose $643,104.50. The court also took into consideration the fact that Catalina had foregone its right to seek a writ of certiorari from the United States Supreme Court.

The trial court recommended that we set security in the amount of $1,194,946.63, the total of all the potential losses that the court had found, plus all the attorney fees charged in this litigation, including the attorney fees that the County incurred in the original litigation involving Catalina and Collins. The trial court also recommended that the form of the security should be an injunction bond or a deposit of cash in lieu of bond.

### APPLICABLE LAW

"When an appeal from an interlocutory order is perfected, the appellate court may make any temporary orders necessary to preserve the parties' rights until disposition of the appeal and may require appropriate security." Tex.R.App. P. 29.3. In

this case, a stay was necessary to protect Ranchos Real's rights, as well as to protect our jurisdiction over the subject matter of the underlying appeal. *See Cox v. Guar. Nat'l Bank,* 565 S.W.2d 565, 569 (Tex.Civ. App.-Corpus Christi 1978, no writ).

Ranchos Real asserts that when an appellate court issues a stay to protect its jurisdiction, no security is required. It is true that some courts have held that no security is required when the court grants a writ of injunction in an original proceeding to protect the court's jurisdiction over a related appeal. *See Powell v. Farm & Home Sav. Ass'n,* 509 S.W.2d 734, 736 (Tex.Civ.App.-Fort Worth 1974, orig. proceeding); *Dawson v. First Nat'l Bank,* 417 S.W.2d 652, 654 (Tex.Civ.App.-Tyler 1967, orig. proceeding). These courts reasoned that the statute granting appellate courts the power to issue writs of injunction does not require security. *See Dawson,* 417 S.W.2d at 654; *see also* Tex. Gov't Code Ann. § 22.221(a) (Vernon 2004); *cf.* Tex.R. Civ. P. 684 (providing that when a trial court grants a temporary injunction, "the court *shall* fix the amount of security to be given by the applicant") (emphasis added). Noting that the statute also does not prohibit the posting of security, other courts have held that they have the power to require security to protect the other parties from a possible loss. *See Pendleton Green Assocs. v. Anchor Sav. Bank,* 520 S.W.2d 579, 582 (Tex.Civ.App.-Corpus Christi 1975, orig. proceeding); *Riverdrive Mall, Inc. v. Larwin Mortgage Investors,* 515 S.W.2d 2, 4 (Tex.Civ.App.-San Antonio 1974, orig. proceeding).

We find it unnecessary to join this debate. Regardless of whether security may be required in a separate original proceeding for writ of injunction, the Texas Rules of Appellate Procedure expressly provide that we may require appropriate security when we enter a temporary order to pro-

tect the parties' rights pending disposition of an interlocutory appeal. *See* Tex.R.App. P. 29.3.

■ Although we clearly have the power to require "appropriate security," there is little to guide us in determining what security is appropriate. We believe the rule gives appellate courts some discretion in determining the amount of security. *Cf. Biodynamics, Inc. v. Guest,* 817 S.W.2d 128, 131 (Tex.App.-Houston [14th Dist.] 1991, writ dism'd by agr.) (stating that the trial court has considerable discretion in setting the amount of bond for a temporary injunction); *Cox,* 565 S.W.2d at 569 (stating that the appellate court had some discretion in setting the amount of the bond to secure the granting of a writ of injunction).

When a trial court grants a temporary injunction, the applicant must post security. Tex.R. Civ. P. 684. The purpose of this security is to secure payment to the party against whom the injunction is granted for losses that may be sustained if it is later determined that the injunction was erroneous. *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 685–86 (Tex.1990); *Biodynamics,* 817 S.W.2d at 130. We will use this principle to determine the amount of security that Ranchos Real should post. Accordingly, in determining the appropriate security, we will only consider losses that may result from the granting of the stay; we will not consider losses resulting from the litigation as a whole.

### ANALYSIS

■ Ranchos Real makes no objection to the trial court's determinations that the joint venture would have paid the County $3,287,363.27 for the property if the transaction had closed and that it will take 16 months for a final decision to be rendered in this case if a petition for review is granted. Accordingly, we will consider

these figures in calculating the appropriate security.[2]

Ranchos Real also makes no objection to the trial court's calculation and consideration of the County's potential losses in arriving at the appropriate amount of security. We agree that these findings are supported by the record and we will consider the County's losses of $71,253.86 in determining the amount of security.

Ranchos Real does object to the trial court's finding that Escobar and the joint venture are paying 6% per year, or $252,000 over 16 months, to keep the funds for the transaction in liquid form. Ranchos Real argues that Escobar's testimony was not credible and was contradicted by Schwartz's testimony. As noted above, the amount of appropriate security to secure the stay is within this Court's discretion. Nevertheless, because we requested the trial court to conduct the evidentiary hearing for us, we will defer to that court's resolution of the credibility of the witnesses and the conflicts in their testimony.

Ranchos Real also argues that the trial court should not have included the amount that Catalina would lose if the transaction does not close. Although Escobar testified that it was possible that the transaction might not close, his testimony linked this possibility to the litigation as a whole, not to the stay. Therefore, we will not consider this amount—$643,104.50—in determining the appropriate security.

Similarly, we will not consider the fact that Catalina agreed to give up its right to seek a writ of certiorari. The loss of this right did not result from the stay.

Ranchos Real argues that the attorney fees should not be considered in setting the appropriate security because the attorneys failed to segregate the fees related to the stay from other fees charged in this litigation. As noted above, the exhibits show 21.6 hours at $500 per hour—$10,800—related to the stay. We agree with Ranchos Real that the remaining, unsegregated attorney fees should not be considered.

CONCLUSION

The motion to require security is granted. Having considered the parties' arguments, the record from the evidentiary hearing, the trial court's findings and recommendation, the applicable law, and the $10,000 already deposited in the registry of the trial court, we conclude that security in the amount of $320,000 is appropriate and that it may take the form of an injunction bond or a deposit of cash. Therefore, within thirty days of the date of this opinion, Ranchos Real must either: (1) execute and file with the trial court clerk a bond to the appellees, with two or more good and sufficient sureties, to be approved by the trial court clerk, in the amount of $320,000, conditioned that Ranchos Real will abide our decision in the appeal and will pay all sums of money and costs that may be adjudged against it in the event the temporary injunction was properly denied by the trial court; or (2) deposit cash in lieu of the bond into the registry of the trial court.

---

2. We note, however, that expert testimony is not required to estimate the length of time for disposition of an appeal in this Court. This information is within the Court's knowledge in its official capacity. *Cf.* Tex.R.App. P. 10.2(b) (indicating that a motion need not be verified if it depends on facts within the appellate court's knowledge in its official capacity). Furthermore, because we stayed proceedings until disposition of this appeal or further order of this Court, we doubt that the length of time that it will take the supreme court to rule in this matter is a relevant consideration.

Ranchos Real must immediately inform this Court in writing when the bond has been filed or the cash has been deposited.