COURT OF APPEALS












 
 
 
  
 
 
 




COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
 RANCHOS REAL
 DEVELOPERS, INC.,
  
                             Appellant,
  
 v.
  
 THE COUNTY
 OF EL PASO, CATALINA DEVELOPMENT, INC., AND DAVID ESCOBAR, TRUSTEE,
  
                             Appellees.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-04-00014-CV
  
 Appeal from the
  
 171st District Court
  
 of El Paso County, Texas
  
 (TC#2003-5550)
 
 




 

O
P I N I O N

This is an interlocutory appeal from
the denial of a temporary injunction to prevent the
sale of certain real property.  We
previously issued a stay of the proceedings in the trial court pending our
disposition of the appeal or further order of this Court.  The matter is before us now to determine the
appropriate amount and form of security to secure the stay.

Procedural
Background








The County of El Paso agreed to sell
a parcel of land to Gregory Collins and Catalina Development, Inc., but then
refused to complete the transaction.  See Catalina Dev., Inc. v. County of El Paso, 105 S.W.3d
643, 644-45 (Tex. App.--El Paso 2002), aff=d, 121 S.W.3d 704 (2003).  Years of litigation ensued.  See id.; Collins v. County of El
Paso, 954 S.W.2d 137 (Tex. App.--El Paso 1997, pet. denied).  On May 8, 2003, the Texas Supreme Court
upheld the conclusion of this Court and the trial court that the County had
sovereign immunity from the breach-of-contract suit brought by Collins and
Catalina.  See Catalina, 121 S.W.3d at 704-05. 
On November 17, 2003, the supreme court denied
rehearing in the case.  Meanwhile,
Collins and Catalina assigned their rights in the transaction to David Escobar,
as trustee for a joint venture composed of Carefree Homes and Tropicana
Homes.  In exchange for the assignment,
the joint venture agreed to give Collins and Catalina $150,000 and a 15%
interest in the property if the transaction closes.

On December 22, 2003, Escobar,
Collins, Catalina, and the County entered into a Rule 11 agreement.  In consideration for the dismissal and
release of all claims related to the property and the promise not to seek a
writ of certiorari from the United States Supreme Court, the County agreed to
sell a portion of the property to the joint venture for $3,040,000 or the
appraised value of the property, whichever is greater.  The joint venture also agreed to reimburse
the County for the attorney fees and court costs it had incurred in the
underlying litigation.








On December 29, 2003, Ranchos Real
Developers, Inc. filed a petition for a temporary restraining order, temporary
injunction, and permanent injunction prohibiting the sale of the property.  Ranchos Real alleged that the sale would
violate statutory provisions governing how County land may be sold.  Ranchos Real also
alleged that it was interested in purchasing the property and would pay more
than what the joint venture was paying. 
The trial court issued a temporary restraining order and Ranchos Real
deposited $10,000 into the registry of the court to secure the order.[1]  On January 21, 2004, the trial court signed
an order denying the temporary injunction, and Ranchos Real filed a notice of
appeal.

On January 23, 2004, Ranchos Real
filed in this Court an Emergency Motion for Temporary Restraining Order and
Writ of Injunction, seeking to enjoin the closing of the sale, which was
scheduled to occur that day.  We stayed
all proceedings related to the property and denied Ranchos Real=s motion as moot.  The County and Escobar later filed a Motion
to Require Security, arguing that Ranchos Real should be required to post
$3,287,363.27--the amount the joint venture was to pay for the property--to
secure the stay.   Ranchos Real naturally requested that we deny the Motion to Require
Security, or alternatively that we allow the $10,000 already posted for the
temporary restraining order to secure the stay. 
We ordered the trial court to conduct an evidentiary hearing to make
findings and recommendations regarding the amount and form of the security.








The
Evidentiary Hearing

At the hearing, Escobar testified
that the appraised value of the property is $3,200,000 and that the County
incurred approximately $87,000 in attorney fees.   Therefore, the purchase price for the
property under the Rule 11 agreement turned out to be approximately
$3,287,000.  Escobar stated that the
joint venture had set aside the funds for the closing on January 23 and that it
was paying a net interest rate of 6% per year, or $525 per day, to keep the
funds available in the bank to close the transaction as soon as our stay is
lifted.  Escobar did not have any loan
documents to support his testimony.  He
did not know how much interest the funds were earning in the bank or what bank
made the loan to the joint venture.  Doug
Schwartz, one of the principals of Ranchos Real, testified that banks generally
do not transfer funds for a loan until the closing of the transaction; if the
transaction does not close, no loan is made.

Escobar further testified that even
if we lifted our stay and allowed the parties to close the sale, the joint
venture would not be able to develop the property as long as this suit is
pending because the suit places a cloud on the title.  He claimed that the joint venture stood to
lose $2,000,000 per year as a result of the Apendency of this litigation@ because the joint venture would have
a stream of income of approximately that amount once it begins developing the
property.  According to Escobar,  the parties may never
close the transaction as a result of this suit. 
He estimated that the joint venture could lose $10,000,000 if the
transaction never closes.








The County Auditor, Edward Anthony Dion, testified that if the County invested $3,200,000 it
would earn $112.89 per day.  He also
testified that a piece of property worth $3,200,000 would generate $12,800 per
year in tax revenue for the County if it were owned by a private entity.  If homes were built on the property,
additional tax revenue would be generated.

Escobar=s attorney, John Mobbs,
testified regarding the time it might take for this Court and the supreme court to render a final decision in this case.  He believed that we would have a decision by
August of this year.  If the supreme court grants review, he believed that April or May
of 2005 is the soonest that a final decision would be made.   Mobbs also
testified that he had charged Escobar $4,000 in attorney fees and that he
anticipated charging an additional $10,000 to $12,000 in fees to complete the
appeal and  another
$10,000 if the supreme court grants review. 
Mobbs did not segregate the fees attributable
to the stay from the fees charged for other matters in the case.








Escobar, an attorney himself,
testified that he had charged the joint venture $12,000 in attorney fees
related to this case.  Although he did
not segregate the fees attributable to the stay in his testimony, his
timesheet, which was admitted as an exhibit, shows that 10 hours of work at
$500 per hour was attributable to the stay. 
Luther Jones, another attorney for Escobar as well as Catalina,
testified that he had charged his clients $27,225 in attorney fees related to
this case.  As with Escobar, his
timesheet was admitted as an exhibit. 
From the timesheet, we can discern 11.6 hours at $500 per hour related
to the stay.  Finally, Morgan Broaddus,
the County=s attorney, testified that he had
charged the County $30,000 in attorney fees related to this case and he
anticipated charging an additional $22,500 to complete the appeal and up to
$23,500 for proceedings in the supreme court. 
He did not segregate the fees related to the stay from his other fees.

The Trial Court=s Findings and Recommendation

The trial court found that the joint
venture would have paid the County $3,287,363.27 for the property if the
transaction had closed.  The court also
found that if this case is pursued to the Texas Supreme Court, the soonest a
decision would be made is April or May of 2005, which would be approximately 16
months from the date of our stay.

Regarding the County=s potential losses, the court found
that the County would receive $112.89 per day in interest on the purchase price
and $12,800 per year in taxes. 
Multiplying these amounts by 16 months, the court determined that the
County stood to lose $54,187.20 in interest and $17,066.66 in taxes.

Regarding the potential losses of
Escobar and the joint venture, the trial court found that they were paying 6%
per year, or $525 per day, to keep the funds for the transaction in liquid
form.  This amounts to a loss of $252,000
over 16 months.








Regarding Catalina=s potential losses, the trial court
found that if the transaction had closed, Catalina would have received $150,000
plus a 15% interest in the property for the assignment of its rights.  Therefore, Catalina stood to lose $643,104.50.  The court also took into consideration the
fact that Catalina had foregone its right to seek a writ of certiorari from the
United States Supreme Court.

The trial court recommended that we
set security in the amount of $1,194,946.63, the total of all the potential
losses that the court had found, plus all the attorney fees charged in this
litigation, including the attorney fees that the County incurred in the
original litigation involving Catalina and Collins.  The trial court also recommended that the
form of the security should be an injunction bond or a deposit of cash in lieu
of bond.

Applicable
Law

AWhen an appeal from an interlocutory
order is perfected, the appellate court may make any temporary orders necessary
to preserve the parties= rights until disposition of the
appeal and may require appropriate security.@ 
Tex. R. App. P. 29.3.  In this case, a stay was necessary to protect
Ranchos Real=s rights, as well as to protect our
jurisdiction over the subject matter of the underlying appeal.  See Cox v. Guar. Nat=l Bank, 565 S.W.2d 565, 569 (Tex. Civ. App.--Corpus Christi 1978, no writ).








Ranchos Real asserts that when an
appellate court issues a stay to protect its jurisdiction, no security is
required.  It is true that some courts
have held that no security is required when the court grants a writ of
injunction in an original proceeding to protect the court=s jurisdiction over a related
appeal.  See Powell v. Farm & Home
Sav. Ass=n, 509 S.W.2d 734, 736 (Tex. Civ.
App.--Fort Worth 1974, orig. proceeding); Dawson v. First Nat=l
Bank, 417 S.W.2d 652, 654 (Tex. Civ. App.--Tyler 1967, orig. proceeding).  These courts reasoned that the statute
granting appellate courts the power to issue writs of injunction does not
require security.  See Dawson, 417
S.W.2d at 654; see also Tex. Gov=t Code Ann. ' 22.221(a) (Vernon 2004); cf. Tex. R. Civ.
P. 684 (providing that when a trial court grants a temporary injunction, Athe court shall fix the amount
of security to be given by the applicant@) (emphasis added).  Noting that the statute also does not
prohibit the posting of security, other courts have held that they have the
power to require security to protect the other parties from a possible
loss.  See Pendleton Green Assocs. v.
Anchor Sav. Bank, 520 S.W.2d 579, 582 (Tex. Civ.
App.--Corpus Christi 1975, orig. proceeding); Riverdrive
Mall, Inc. v. Larwin Mortgage Investors, 515 S.W.2d 2, 4 (Tex. Civ.
App.--San Antonio 1974, orig. proceeding).

We find it unnecessary to join this
debate.  Regardless of whether security
may be required in a separate original proceeding for writ of injunction, the
Texas Rules of Appellate Procedure expressly provide that we may require
appropriate security when we enter a temporary order to protect the parties= rights pending disposition of an interlocutory appeal.  See Tex.
R. App. P. 29.3.








Although we clearly have the power to
require Aappropriate security,@ there is little to guide us in
determining what security is appropriate. 
We believe the rule gives appellate courts some discretion in
determining the amount of security.  Cf. Biodynamics, Inc. v. Guest,
817 S.W.2d 128, 131 (Tex. App.--Houston [14th Dist.] 1991, writ dism=d
by agr.) (stating that the trial court has
considerable discretion in setting the amount of bond for a temporary
injunction); Cox, 565 S.W.2d at 569 (stating that the appellate court
had some discretion in setting the amount of the bond to secure the granting of
a writ of injunction).

When a trial court grants a temporary
injunction, the applicant must post security. 
Tex. R. Civ.
P. 684.  The purpose of this
security is to secure payment to the party against whom the injunction is
granted for losses that may be sustained if it is later determined that the
injunction was erroneous.  DeSantis v. Wackenhut
Corp., 793 S.W.2d 670, 685-86 (Tex. 1990); Biodynamics, 817 S.W.2d at 130.  We will use this principle to determine the
amount of security that Ranchos Real should post.  Accordingly, in determining the appropriate
security, we will only consider losses that may result from the granting of the
stay; we will not consider losses resulting from the litigation as a whole.

Analysis

Ranchos Real makes no objection to
the trial court=s determinations that the joint venture would have paid the
County $3,287,363.27 for the property if the transaction had closed and that it
will take 16 months for a final decision to be rendered in this case if a
petition for review is granted. 
Accordingly, we will consider these figures in calculating the
appropriate security.[2]








Ranchos Real also makes no objection
to the trial court=s calculation and consideration of the County=s potential losses in arriving at the
appropriate amount of

security. 
We agree that these findings are supported by the record and we will consider  the County=s losses of $71,253.86 in determining
the amount of security.

Ranchos Real does object to the trial
court=s finding that Escobar and the joint
venture are paying 6% per year, or $252,000 over 16 months, to keep the funds
for the transaction in liquid form. 
Ranchos Real argues that Escobar=s testimony was not credible and was
contradicted by Schwartz=s testimony.  As noted
above, the amount of appropriate security to secure the stay is within this
Court=s discretion.  Nevertheless, because we requested the trial
court to conduct the evidentiary hearing for us, we will defer to that court=s resolution of the credibility of
the witnesses and the conflicts in their testimony.

Ranchos Real also argues that the
trial court should not have included the amount that Catalina would lose if the
transaction does not close.  Although
Escobar testified that it was possible that the transaction might not close,
his testimony linked this possibility to the litigation as a whole, not to the
stay.  Therefore, we will not consider
this amount--$643,104.50--in determining the appropriate security.








Similarly, we will not consider the
fact that Catalina agreed to give up its right to seek a writ of
certiorari.  The loss of this right did
not result from the stay.

Ranchos Real argues that the attorney
fees should not be considered in setting the appropriate security because the
attorneys failed to segregate the fees related to the stay from other fees
charged in this litigation.  As noted
above, the exhibits show 21.6 hours at $500 per hour--$10,800--related to the
stay.  We agree with Ranchos Real that
the remaining, unsegregated attorney fees should not
be considered.

Conclusion

The motion to require security is
granted.  Having considered the parties= arguments, the record from the
evidentiary hearing, the trial court=s findings and recommendation, the
applicable law, and the $10,000 already deposited in the registry of the trial
court, we conclude that security in the amount of $320,000 is appropriate and
that it may take the form of an injunction bond or a deposit of cash.  Therefore, within thirty days of the date of
this opinion, Ranchos Real must either: 
(1) execute and file with the trial court clerk a bond to the appellees, with two or more good and sufficient sureties,
to be approved by the trial court clerk, in the amount of $320,000, conditioned
that Ranchos Real will abide our decision in the appeal and will pay all sums
of money and costs that may be adjudged against it in the event the temporary
injunction was properly denied by the trial court; or (2) deposit cash in lieu
of the bond into the registry of the trial court.








Ranchos Real must immediately inform this Court in writing
when the bond has been filed or the cash has been deposited.

 

SUSAN
LARSEN, Justice

April 22, 2004

 

Before Panel No. 1

Larsen, McClure, and Chew,
JJ.

 











[1]Ranchos
Real=s
attorney has represented to this Court that the $10,000 remains in the registry
of the trial court.





[2]We
note, however, that expert testimony is not required to estimate the length of
time for disposition of an appeal in this Court.  This information is within the Court=s knowledge in its official
capacity.  Cf. Tex. R. App. P. 10.2(b) (indicating
that a motion need not be verified if it depends on facts within the appellate
court=s
knowledge in its official capacity). 
Furthermore, because we stayed proceedings until disposition of this
appeal or further order of this Court, we doubt that the length of time that it
will take the supreme court to rule in this matter is
a relevant consideration.